2016 PA Super 238

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT J. KEARNS | |
| Appellant | No. 192 EDA 2016 |

Appeal from the Judgment of Sentence December 11, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000829-2012

BEFORE: OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED NOVEMBER 07, 2016**

Robert J. Kearns ("Appellant") appeals from the judgment of sentence imposed on December 11, 2015, in the Court of Common Pleas of Northampton County after this Court remanded the matter for resentencing as to the length of the probationary period, which took Appellant's sentence beyond the statutory maximum. On remand, the trial court remedied the illegal sentence by eliminating the probationary period while retaining the original upward departure sentence of six to twelve months' incarceration for third-degree misdemeanor theft by failure to make required disposition of funds received.[1] Appellant now contends his sentence is both illegal and the product of the court's abuse of sentencing discretion. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

*(Footnote Continued Next Page)*

We previously set forth the factual and procedural history of the case as follows:

On January 11, 2013, a jury convicted Kearns and his co-defendant, Patrick Joseph McLaine,[ ] of theft by failure to make required disposition of funds received.[ ]  As will be discussed below, the court ultimately sentenced Kearns to a term of six to 12 months' incarceration, 12 months' probation, a fine of $2,500.00, and restitution in the amount of $832,460.00.

***

The facts and procedural history are as follows.[ ]  Kearns and McLaine were the two principals of a company known as Municipal Energy Managers, Inc. ("MEM").  On July 2, 2007, Kearns and McLaine entered into a written contract with the Township of Bethlehem, a municipality in Northampton County ("Bethlehem Township").  The contract provided MEM would act as an agent for Bethlehem Township to facilitate the purchase of township street lights from the public utility company, Pennsylvania Power and Light ("PPL")[, the purpose of which was to save the township money by accessing a lower utility rate for municipal-owned streetlights].  Kearns and McLaine drafted the contract and determined the total cost to do all work necessary for Bethlehem Township to purchase the street lights from PPL. A price of $1,001,230.00 was to be used to pay any and all costs of the purchase including, but not limited to, paying PPL for the transfer of the street lights.  The contract provided performance was to occur within a period of 12 to 18 months, ending anywhere between July 2, 2008 and January 2, 2009, and was considered completed when ownership of the street lights was transferred from PPL to the township.  Additionally, the contract stated the township would be receiving the lower utility rate by January of 2009.  For its services, MEM was to receive a five percent commission of $50,060.00

To begin performance, MEM requested Bethlehem Township pay them $832,460.00.  On July 3, 2007, Kearns and McLaine

_(Footnote Continued)_ ————————

[1] 18 Pa.C.S. § 3927.

- 2 -

received a check in the requested amount. On July 5, 2007, the check was deposited into a general corporate bank account in the name of MEM, which Kearns and McLaine jointly controlled.[ ] [With respect to the contract, there was no escrow requirement that Bethlehem Township's funds be held separately from the rest of MEM's other accounts. *See* N.T., 1/10/2013, at 162.]

In October 2007, Kearns and McLaine wrote checks from the MEM general corporate account to themselves. Specifically, on October 1, 2007, a check was made payable to Kearns for the amount of $366,600.00. That same day, a check was issued to McLaine in the amount of $499,945.000, as well as a second check to McLaine in the amount of $109,059.00. All three checks were signed by both defendants. At trial, Kearns and McLaine testified these checks represented bonuses paid to themselves.

On August 5, 2009, PPL sent a letter to Kearns, stating that it had learned MEM was performing unauthorized work on its streetlights. The letter identified Bethlehem Township as one of the affected municipalities.

Despite receiving the funds, MEM did not contact PPL to initiate the transfer of street lights until August 10, 2009, eight months past the 18-month completion deadline, by sending a letter announcing its intent to purchase the streetlights. On September 17, 2009, PPL sent a letter to MEM, outlining the estimated costs of the total project, which was to be $271,180.00, well below MEM's estimate of $1,001,230.00. The letter also requested MEM make a deposit to PPL in the amount of $22,525.00 in order to initiate the process of the light transfer. Kearns and McLaine did not respond to PPL's request or make the payment. On October 5, 2009, MEM sent Bethlehem Township an invoice for $131,438.00. The township did not pay it.

In January of 2010, a grand jury investigation was conducted in relation to this matter. On January 26, 2012, the grand jury returned a presentment, recommending the arrest of Kearns and McLaine on charges of theft by failure to make required disposition of funds received, misapplication of entrusted property, and criminal conspiracy.

A criminal complaint was then filed on February 16, 2012. As noted above, the two men were tried together. The joint jury trial began on January 7, 2013. On January 11, 2013, the jury found Kearns and McLaine guilty of theft by failure to make required disposition of funds received, but not guilty of the other two charges.

On April 12, 2013, and April 19, 2013, Kearns and McLaine, respectively, were both sentenced to a term of 16 to 60 months' incarceration, 60 months of probation, and restitution in the amount of $832,460.00. The court graded the theft offense as a third-degree felony pursuant to 18 Pa.C.S. § 3903 (grading of theft offenses) on the basis that the value of the theft was in excess of $2,000.00.

On April 24, 2013, Kearns and McLaine filed motions challenging the trial court's grading of the offense as a third-degree felony pursuant to **Apprendi v. New Jersey**, 530 U.S. 466 (2000). They argued that the verdict slip could not support a felony conviction because it did not require the jury to determine the value of the property that gave rise to the convictions, *i.e.*, the commencement check issued by Bethlehem Township. The trial court agreed and on May 31, 2013, granted the motion.

On June 4, 2013, the court re-sentenced Kearns and McLaine with regard to the theft offense, grading it as a third-degree misdemeanor, and ordered them to serve a term of six to 12 months' incarceration, 60 months' probation, a fine of $2,500.00, and restitution in the amount of $832,460.00. Subsequently, on June 13, 2013, Kearns and McLaine filed post-sentence motions, including a motion for reconsideration of sentence. On July 31, 2013, the trial court entered an order, modifying their sentences to a consecutive period of probation of 12 months rather than 60 months. The remainders of their sentences were not changed. [Appellant's] appeal followed.

**Commonwealth v. Kearns**, No. 2480 EDA 2013, unpublished memorandum at 1-6 (Pa.Super. filed November 13, 2015).

In addressing Kearns' initial direct appeal, we rejected five issues directed at his verdicts but deemed his challenge to the legality of sentence

meritorious, for his aggregate two-year sentence, which included a one-year probationary tail, exceeded the statutory maximum sentence of one-year applicable to a misdemeanor of the third degree. **See** 18 Pa.C.S. § 106(b)(8). Accordingly, we vacated judgment of sentence and remanded the matter "for re-sentencing as to the length of the probationary period." **Kearns**, at 32. We came to the same decision and entered an identical order in McLaine's appeal.

At Appellant's and McLaine's resentencing hearing, the Commonwealth argued for the reinstatement of a statutory maximum six to twelve-month sentence, but with no probationary tail, in accordance with this Court's memorandum decision. N.T. 12/11/15, at 5-6. The Commonwealth also advised the court that it would object to any parole "because they've [Appellant and McLaine] offered no restitution on this case whatsoever, although they've been out and had that opportunity." *Id.*

Counsel for Appellant asked that the court consider, prior to resentencing, his previous arguments calling for a standard range sentence of restorative sanctions.[2] Counsel for McLaine, meanwhile, suggested that

---

[2] With an offense gravity score of one and a prior record score of zero, the standard range applying to each of the defendants' third-degree misdemeanors was RS to RS, with an aggravated range of RS to three months' incarceration. N.T. 6/4/13 at 8. **See** 42 Pa.C.S.A. § 303.16(a). Basic Sentencing Matrix (indicating M3 theft is with a prior record score of zero is RS plus-or-minus three months.

our decision could be read as a directive to eliminate either the probationary period or the sentence of incarceration. Counsel also informed the court that he believed the guidelines called for restorative sanctions without incarceration, and he objected to an upward departure, six to twelve-month sentence of incarceration despite McLaine's having "no prior record at all." *Id.*, at 8.

> The Commonwealth responded:
>
> First of all, I don't believe the Superior Court at all addressed the [trial court's] decision to impose the maximum statutory offense permitted by law. The whole appeal was based upon the consecutive probation that went beyond the twelve months.
>
> I think that [the trial court], you sat as the trial judge in this case. We're talking about hundreds of thousands of dollars that were basically stolen by these two defendant. They have no remorse. They're appealing all over the state with the same type of scheme that the jury found that they were involved with.
>
> And this court is not bound by those guidelines when it's an egregious case. And I believe that you made a record on that, and certainly can make a record again, to impose the sentence that you intended, which was six to twelve months.

*Id.*, at 9.

The court agreed with the Commonwealth that elimination of the probationary tail would satisfy the directive of this Court. After announcing that it was adopting the "previous records made in all respects" at the prior sentencing hearing, the court imposed a six to twelve-month sentence of incarceration without any probationary tail. *Id.*, at 10. On December 23, 2015, the trial court denied Appellant's motion for reconsideration

challenging, *inter alia*, the discretionary aspects of his sentence. This timely appeal followed.

Appellant raises the following issue for our review.

**1. WHETHER THE TRIAL COURT'S SENTENCE OF 6-12 MONTHS INCARCERATION EXCEEDING THE AGGRAVATING RANGE OF THE PENNSYLVANIA COMMISSION ON SENTENCING GUIDELINES AT 204 PA. CODE §303.16(A) FOR A CONVICTION OF A MISDEMEANOR THREE [M-3] THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS, TITLE 18 Pa.C.S. § 3927(A) IS UNREASONABLE AND AN ABUSE OF DISCRETION?**

Appellant's brief at 7.

As Appellant raises a challenge to the discretionary aspects of his sentence, we note the applicable standard of review is as follows.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa.Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that he preserved this issue by including it in his post-sentence motion for reconsideration. Appellant has also included in his brief a statement pursuant to Pa.R.A.P. 2119(f). We now consider whether Appellant has presented a substantial question for our review.

What constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

*Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

Appellant's Rule 2119(f) statement presents the issue that the court's sentence was "manifestly excessive in light of the criminal conduct and is inconsistent with the protection of the public and with the Defendant's rehabilitative needs." Appellant's brief at 11. Appellant asserts, also, that the court abused its discretion when it resentenced him to "an aggravated range"[3] sentence for regraded offense when it originally identified no specific aggravators upon sentencing him within the standard range for a third-degree felony.[4] As we discern within this statement a claim that insufficient

_____

[3] As noted, *supra*, Appellant's sentence exceeds the aggravated range by three months, making it an upward departure sentence. Appellant appears to appreciate this fact, however, as we observe later within his statement that he claims the sentence "exceeded the aggravated range."

[4] Appellant fails to raise and develop this challenge in his argument section, and so it is waived. Inferring the nature and contours of this claim from Appellant's rule 2119(f) statement, however, we conclude that argument offered in its support would be devoid of merit.

As noted above, the court downgraded Appellant's offense from a third-degree felony to a third-degree misdemeanor after granting his *Apprendi*-based motion for reconsideration because the verdict slip did not require the jury to determine the value of the property that gave rise to his theft conviction. Advised by a new, corrected sentencing guideline sheet

*(Footnote Continued Next Page)*

reasons supported Appellant's upward departure sentence, we conclude it raises a substantial question for our review. *See*, *e.g.*, *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa.Super. 2002).

In reviewing the court's exercise of sentencing discretion, we refer to *Griffin*, where we recognized:

> The sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. [*Commonwealth v. Eby*, 784 A.2d 204 (Pa.Super. 2001)] at 207. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. *Id.* at 206. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only. *Id.*

*Griffin*, 804 A.2d at 7–8.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

setting a range of RS plus-or-minus three months, and operating under a reduced statutory maximum sentence of 12 months' incarceration applicable to a third-degree misdemeanor, the court deviated upward from the guideline ranges by three months in imposing its six to 12 month sentence.

Any contention under this record that the court's imposition of a standard range sentence on Appellant's third-degree felony conviction obligated it to sentence him in the standard range on his revised, misdemeanor conviction is flawed. It was within the sound discretion of the sentencing court, to consider trial evidence and victim impact statements at sentencing and conclude that the circumstances and consequences of the crime, while typical for a third-degree felony, were atypically egregious and damaging for a third-degree misdemeanor. Accordingly, we would find no abuse of discretion in the court's decision to depart from a guideline range sentence on Appellant's third-degree misdemeanor.

At the resentencing hearing, the trial court imposed the same six to twelve-month sentence of incarceration it imposed previously in its amended sentence based on a corrected guideline sheet, but it did so without reiterating the specific reasons that it offered at the original hearing in support of an upward departure sentence. Instead, the court stated that it was incorporating "the previous records made in all respects." N.T., 12/11/15, at 10.

A review of the original sentencing hearing shows the court acknowledged receiving a presentence investigation report and a guideline statement. N.T., 4/19/13, at 2. The court heard family statements in mitigation, Appellant's remorseful allocution, and counsel's presentation of Appellant's singular attempts to rectify MEM and his willingness to work with the bankruptcy trustee in a substantial way to maximize any restitution that will be due. *Id.*, at 5-34, 46-48.

A county commissioner addressed the court, reminding it that, because of Appellant's and McLaine's theft and deliberate misrepresentations, Bethlehem Township not only fails to own its streetlights as promised and pays higher electric rates, as well, but also, as of 2013, has paid $214,045.79 in interest payments on the $832,460 loan which the defendants misappropriated. *Id*. at 36. The township, in fact, is scheduled to make interest payments on the loan through 2027. *Id.* An additional result of Appellant's actions, according to the commissioner, was that the

township had cut its workforce and left thirteen open positions vacant through 2012. *Id.*, at 35-38.

The Commonwealth advised the court that it gave the defendants the opportunity to make restitution in order to avoid prosecution, but Appellant and McLaine made none. *Id.*, at 41-44. Nor did the defendants offer any restitution between their January verdicts and April sentencing hearing, according to the prosecutor. *Id.* Future restitution also seemed doubtful, the prosecutor concluded, given the defendants' bankruptcy filings and the defensive postures they assumed in various civil actions filed against them, where they have made no offers of settlement. *Id.*

Prior to announcing sentence, the court stated that it was confounded by how a man so important to both his family and community could risk everything by not only engaging in the conduct underlying the offense but also avoiding responsibility post-verdict by avoiding serious efforts at restitution. *Id.*, at 48-52. The court, therefore, felt justified in departing three months upwards from the guideline ranges given both the magnitude of the deception perpetrated and the substantial economic burden assumed by tens of thousands of residents, particularly in the absence of any restitution as of the date of sentencing. *Id.*, at 42-43.

The notes of testimony from Appellant's original sentencing hearing demonstrate that the court fashioned its sentence in adherence to the principles discussed in **Griffin**. At the post-remand resentencing hearing, the court specifically referenced the past sentencing hearing record and

incorporated it for purposes of resentencing Appellant to the same six to twelve-month sentence of incarceration minus a probationary period. Accordingly, we reject Appellant's claim alleging that the court failed to provide a factual basis and state specific reasons supporting his upward departure sentence.

Judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2016