J-A25013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| OMAR PRIOLEAU | : | |
| | : | |
| Appellant | : | No. 2901 EDA 2015 |

Appeal from the Judgment of Sentence September 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014598-2013

BEFORE:   OTT, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 22, 2018**

Omar Prioleau appeals from the judgment of sentence imposed on September 4, 2015, in the Court of Common Pleas of Philadelphia County, following his conviction on the charge of conspiracy to possess an instrument of a crime (PIC).[1]  Prioleau received a sentence of two and one-half to five years' incarceration.  In this timely appeal, Prioleau raises two issues: 1) the trial court erred in failing to suppress statements obtained pursuant to a defective *Miranda*[2] waiver, and 2) the sentence imposed is manifestly excessive in light of Prioleau's prior record score of zero and the trial court's

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903, 907.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

reliance on improper factors.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

On the night of July 6, 2013, Marquieta Johnson, her boyfriend, Demetrius Bowman, and their friend, Hakeem Keith, were sitting on the steps of a church near Johnson's home when two men approached them and began shooting.  Bowman was struck twice and seriously wounded, eventually spending more than two months in a hospital.  Police found 13 shell casings at the site, 10 of the casings were from a 9 mm gun, and three were from a .40 caliber gun.  During subsequent police interviews, both Bowman and Keith identified Prioleau and co-defendant Dahmir Morrison as the shooters.  Both men later recanted their identifications.

Prioleau, 17 years, 7 months old at the time, was interviewed by the police on July 10, 2013.  Prioleau waived his **Miranda** rights and spoke with the police for approximately 20 minutes.  During the interview, Prioleau told the police, "There wasn't nothing to be sorry about out there.  I did what I did and I ain't putting nothing on nobody else." Commonwealth Exhibit C-10. Prioleau's mother had been notified by the police they had arrested him and wanted to interview him.  Prioleau's mother did not forbid the police from questioning her son and told them, "do what you are going to do."  N.T. Suppression, 1/29/2015 at 21-22.  Accordingly, no adult was present when the police questioned Prioleau.

Prioleau was charged with a variety of crimes, including attempted murder, aggravated assault, PIC, VUFA and conspiracy to commit murder.

The jury acquitted Prioleau of all charges except conspiracy. The verdict sheet supplied to the jury failed to list the object of the conspiracy, therefore judgment was entered on the lowest graded charge, PIC, a first-degree misdemeanor.

In his first issue, Prioleau claims the trial court erred in failing to suppress the statement given during his police interview. He argues he did not knowingly and voluntarily waive his *Miranda* rights as he did not consult with an adult, had never been interrogated by the police before this, and exhibited mental problems.

Our standard of review for the denial of a motion to suppress is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted).

When determining the voluntariness of a confession, a court should consider the following factors:

> the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

***Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998) (citation omitted).

Further, specifically relevant to this matter, our Supreme Court has held:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by the application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending acts and circumstances must be considered and weighed in determining whether a juvenile's confessions was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension and the presence or absence of an interested adult.

***Commonwealth v. Williams***, 475 A.2d 1283, 1288 (Pa. 1984) (superseded by statute on other grounds).

Instantly, the trial court conducted a totality of the circumstances analysis, opining:

> In the present case, after a consideration of the totality of the circumstances, the Court concluded that [Prioleau] made a knowing and intelligent waiver of his Miranda rights and gave the detective a voluntary statement. Here, the interview with the detective was only about 20 minutes long. There was no evidence of any coercion through physical or psychological abuse. [Prioleau] was given his rights and said that he understood them. He knew that he could stop the interview at any time, which he did by saying, "Look, man, I think I am done with this." (N.T. 1/29/15, p. 25). This was a sophisticated juvenile who was only

- 4 -

five months shy of his 18th birthday. He had previous experiences with the legal system having lived in a juvenile placement facility. And he had been living on his own having been previously been reported as a runaway. All these factors show a consciousness of the system and that he knowingly waived his rights and gave a voluntary statement.

Although [Prioleau] did not speak with his mother, Detective Wolkiewicz testified [Prioleau] never said anything about him not speaking without his mother or another guardian present. (N.T. 1/29/15, p. 23). Detective Wolkiewicz also testified that he had called [Prioleau's] mother and said he wanted to talk to [Prioleau] and get some information about the incident. He testified that the mother told him "to do what you are going to do." (N.T. 1/29/15, pp. 20-21). Though [Prioleau's] mother testified that the Detective hung up on her when she asked to speak with her son, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all, part, or none of the evidence. Here, the Court found that the testimony of Detective Wolkiewicz was entirely reasonable and credible, more so than the testimony of [Prioleau's] mother which the Court found to be inconsistent, biased, and incredible.

Trial Court Opinion, 6/6/2016, at 5-6 (case law citations omitted).

The certified record supports the trial court's recitation of facts and the legal reasoning is sound. The evidence of record shows the interview lasted a short time, less than one-half hour; at that time, Prioleau was almost 18 years old, there is no evidence that Prioleau's will was overborne in any manner, and Prioleau appeared to understand his rights by voluntarily terminating the interview. The totality of the circumstances supports the trial court's finding that Prioleau knowingly and voluntarily waived his right to remain silent. Accordingly, we have no basis to reverse the order denying suppression. Prioleau is not entitled to relief on this issue.

We also comment upon Prioleau's assertion that his behavior during the police questioning indicated a relevant physical or mental problem. This argument is only somewhat amplified in his discussion of the facts. Prioleau asserts:

> Furthermore, where the **T.B.**[3] defendant had intellectual disabilities, Mr. Prioleau became unresponsive after only twenty-eight minutes of questioning, despite no evidence of physical or psychological coercion.

Prioleau's Brief at 20. We assume this argument means that Prioleau's silence, after only a short period of questioning, was indicative of some manner of intellectual disability, hence the reference to **In re T.B.**, *supra*. During the suppression hearing, Detective Wolkiewicz's interview with Prioleau was marked as an exhibit and entered into evidence as Commonwealth Exhibit C-10. The entire interview encompassed two pages and ten questions. Relevant to Prioleau's assertion, the exhibit read, in part:

> Question: You know you're charged with three counts of att[empted] murder, assault, and firearms charges; is that correct?
>
> Prioleau: They told me when I got here.
>
> Question: Omar, what can you tell me about that incident?
>
> Prioleau: Look, man, I mean it was all bullshit. I mean, you asking me like I care. There wasn't nothing to be sorry about out there. I did what I did and I ain't putting nothing on nobody else.

---

[3] **In re T.B.**, 11 A.3d 500 (Pa. Super. 2010). In T.B., the defendant was 16 year old, had a 67 I.Q., read at the third grade level, and was not provided the company of an informed, interested adult for the interview.

Question: Omar, I am going to ask you to explain what you meant. Do you understand?

Prioleau: Look man, I think I am done with this.

At 5:20 p.m. the def[endant] stopped talking and stared at the table. This statement was concluded at that time. The statement was read to Omar. He refused to comment and refused to say anything. [Written by Det. Wolkiewicz at the end of questioning.]

Exhibit C-10; *see* N.T. Suppression, 1/29/2015.

Absent any other compelling evidence, this exchange at the end of the police interview indicates only that Prioleau exercised his right to terminate the interview. Accordingly, we decline the opportunity to classify this exercise of one's constitutional Fifth Amendment right as evidence of an intellectual disability.

Prioleau's second claim is that the trial court abused its discretion during sentencing. Prioleau argues the statutory maximum sentence imposed, two and one-half to five years' incarceration, was manifestly excessive and was based upon improper factors, specifically, the charges for which he was acquitted. This argument is unavailing.

As Prioleau raises a challenge to the discretionary aspects of his sentence, we note the applicable standard of review is as follows.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
* * *

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

***Commonwealth v. Kearns***, 150 A.3d 79, 84 (Pa. Super. 2016).

Instantly, there is no question that the first three factors have been complied with. Regarding the existence of a substantial question, Prioleau has claimed the trial court relied upon improper factors. Specifically, he claims he is being punished for the crimes of which he was acquitted. This claim raises a substantial question. ***Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010) (claim the trial court relied on an improper factor raises a substantial question permitting review).

Prioleau was sentenced for conspiracy to possess an instrument of crime. 18 Pa.C.S. §§ 903/907. This is a first-degree misdemeanor (M1) with an offense gravity score (OGS) of 4. Prioleau's prior record score (PRS) was zero. Accordingly, a standard range sentence was Restorative Sanctions (RS) to 3 months' incarceration. As noted above, Prioleau received the statutory maximum sentence for an M1, two and one-half to five years' incarceration. As an aggravated range minimum sentence would have been three to six months' incarceration, the sentence imposed was clearly outside the guidelines.

> In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence.

**Commonwealth v. Kitchen**, 162 A.3d 1140, 1147 (Pa. Super. 2017) (citation omitted).

Here, the trial court provided the following contemporaneous statement during the sentencing hearing:

> A PIC that was used to shoot another human being…He was part of a conspiracy to possess a firearm… that was used to shoot a human being.

N.T. Sentencing, 9/4/2015 at 6.

Also,

> I don't agree that you can't look at the totality of the circumstances of the case to come to an analysis of the fact that they convicted him of conspiring to, you know, possess a firearm and what happened with regard to that case. It's not the same thing as, you know, someone walking down the street with a

- 9 -

screwdriver in their hand that was just used to burglarize a house. That's a way different set of facts, right? Than a situation where a firearm was used with intent to employ it criminally to commit the crime of attempted murder. I think those are different, that I'm allowed to consider all that.

*Id*. at 10-11.

At sentencing, evidence was also presented that Prioleau had been the victim of a shooting that bore a similarity to the instant crime. The trial court commented:

I think it has extremely minimal, you know. I think to take the, you know, to sort of acknowledge that, you know, there was an opportunity to walk away, like, it's a small. It's like a very minute, small part.

I'm sad that he didn't take advantage of the opportunity to walk away unscathed from a shooting and change your life. That's about as minimal as we get and I sort of wish he had used that opportunity and we wouldn't be here. That's how I take it.

*Id*. at 18.

Finally, the trial court summarized:

All right. So Commonwealth versus Gupton talks about the defendant's prior record score not adequately reflecting a criminal background, and that same analysis applies with regard to I think the offense gravity score where I don't believe that the offense gravity score of four in this case, I don't believe that a four/zero adequately reflects the entirety of the situation, this case. I don't think it adequately takes into account the entirety of the way in which this firearm.

I've said this, right? This is the reason for going outside the guidelines is that using a weapon, a firearm, with intent to employ it criminally to engage in an aggravated assault and attempted murder is not reflective in an offense gravity score of four, and because of that and because of the defendant's lack of remorse, lack of acceptance of responsibility, as well as just the nature of this entire thing that happened with regard to that firearm, the

- 10 -

fact that there were three people who were targeted for that attempted murder/agg assault, the sentence is two and a half to five.

*Id*. at 20-21.

While we agree with Prioleau's assertion that a trial court may not impose a sentence based upon crimes the defendant was acquitted of, we also note that the trial court is not required to ignore facts that were developed at trial. *See Commonwealth v. Druce*, 796 A.2d 321, 336 (Pa. Super. 2002), (the sentencing court may make reasonable inferences based upon the facts of record and that the fact that the charge of homicide by vehicle was dropped prior to trial did not negate the fact that the victim was killed by the accident). *See also Commonwealth v. Archer*, 722 A.2d 203, 212 (Pa. Super. 1998) (even though the defendant was acquitted of murder, the injuries that resulted from the shooting were still attributable to the defendant).

Here, the record reflects the trial court did not sentence Prioleau based upon the acquitted felony charges of attempted murder and aggravated assault. Rather, the trial court examined the totality of what occurred and the obvious object of the conspiracy to possess the firearm, which was, under the facts developed at trial, the attempted murder of one of the victims. The trial court properly concluded that the OGS/PRS and attendant guideline range sentences did not adequately address the specifics of the crime committed.

Similarly, we do not believe the trial court improperly commented upon the fact Prioleau had been the target of a shooting. Our review of the certified record convinces us that the trial court did not punish Prioleau because an

unknown person shot at him. Rather, the trial court found that Prioleau had been the victim in an incident that was similar to the one in which he was a defendant. The irony of this is readily apparent. The trial court recognized that a person who was a victim of such a crime might have been in a good position to appreciate the nature of such an act and avoid taking part in a similar incident. We do not believe this determination constitutes an infringement on the due process rights of Prioleau. In light of the above, Prioleau is not entitled to relief on this issue.

Lastly, we note that, in a footnote, Prioleau comments upon the impropriety of relying upon "a defendant's silence at sentencing to infer a lack of remorse and justify a harsher sentence, as Judge Anhalt did, here." Piroleau's Brief at 23 n 3. Because this footnote is the only place wherein this argument was presented, this claim is waived. See Pa.R.A.P. 302(a). Nevertheless, we have previously quoted Prioleau's statement given to Detective Wolkiewicz in which Prioleau stated, "I mean you asking me like I care. There wasn't nothing to be sorry about out there." Exhibit C-10. Prioleau's own words demonstrated his lack of remorse. Accordingly, this argument fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/18