J-S80035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT J. KEARNS, | : | |
| | : | |
| Appellant | : | No. 3132 EDA 2017 |

Appeal from the PCRA Order August 31, 2017
in the Court of Common Pleas of Northampton County,
Criminal Division at No(s): CP-48-CR-0000829-2012

BEFORE: BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 13, 2018**

Robert J. Kearns ("Kearns") appeals from the Order (hereinafter "PCRA Order") denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. §§ 9541-9546. We reverse the PCRA Order, vacate Kearns's underlying judgment of sentence, and remand for resentencing.

The PCRA court set forth the history underlying this appeal in its PCRA Order, which we incorporate herein by reference. *See* PCRA Order, 8/31/17, at 1-5.

On August 31, 2017, the PCRA court entered the PCRA Order, concomitantly with a Statement of Reasons thoroughly explaining its reasons for denying PCRA relief. Kearns timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of

on appeal. The PCRA court thereafter issued a Rule 1925(a) Opinion, relying upon the reasoning it had advanced in its Statement of Reasons.

Kearns now presents the following issues for our review:

1. Whether the restitution component of [Kearns's] sentence on December 11, 2015, ordering restitution in the amount of $832,460.00[,] payable to Bethlehem Township[,] is illegal because the Township of Bethlehem cannot be a victim under the subject criminal statutes, and therefore, [Kearns's] sentence must be vacated?

2. Whether the [PCRA] court's denial of [Kearns's PCRA] Petition … was unlawful and an abuse of discretion where the restitution Order in this case is illegal because the Township of Bethlehem cannot be a victim under the subject criminal statutes?

Brief for Appellant at 4 (capitalization omitted). We will address Kearns's issues together, as they are related.

We begin by noting our standard of review: "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Id.* (citation omitted).

Relying upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Veon*, 150 A.3d 435, 450 (Pa. 2016),[1] Kearns argues

---

[1] Kearns direct appeal was pending when *Veon* was decided.

that "the restitution portion of his sentence[,] requiring payment of $832,460.00[,] is illegal and must be vacated because Bethlehem Township[2] cannot be considered a direct victim nor a reimbursable compensating government agency, under 18 Pa.C.S.A. § 1106[,3] for purposes of restitution." Brief for Appellant at 15 (footnotes added); *see also Veon*, 150 A.3d at 454-55 (holding that a restitution order directing payment to a Commonwealth agency,[4] as the "victim" of a crime under Section 1106, constitutes an illegal sentence).[5]

The PCRA court, in its PCRA Order and Statement of Reasons, summarized (1) the *Veon* decision; (2) the arguments of both parties in the instant case as to whether *Veon* applies here and invalidates Kearns's restitution Order; and (3) the court's reasons for determining that *Veon* is

---

[2] Bethlehem Township is incorporated as a Pennsylvania municipality under the First Class Township Code. *See* 53 Pa.C.S.A. § 55101, *et seq.*

[3] Section 1106 provides, in relevant part, that a "court shall order full restitution … [r]egardless of the current financial resources of the defendant, so as to provide *the victim* with the fullest compensation for the loss." 18 Pa.C.S.A. § 1106(c)(1)(i) (emphasis supplied). The definition of "victim," set forth in 18 Pa.C.S.A. § 1106(h), references the definition of "victim" contained in the Crime Victims Act ("the CVA"), *see* 18 Pa.C.S.A. § 11.103 (discussed *infra*).

[4] The trial court ordered Veon to pay restitution to the Pennsylvania Department of Community and Economic Development ("DCED") following his conviction for unlawfully diverting public resources.

[5] We note that legality of sentence claims are always subject to review if the PCRA petition is timely filed. *See Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999).

inapplicable. *See* PCRA Order, 8/31/17, at 5-13.[6] We incorporate the PCRA court's recitation herein by reference. *See id.* at 5-13.

In distinguishing *Veon*, the PCRA court emphasized that *Veon* "involved an imprecise amount of restitution calculated to punish the non-pecuniary gains realized by the defendant as a result of his criminal conduct, [whereas] the restitution ordered in this case represents a specific amount of money taken from a specific victim." PCRA Order, 8/31/17, at 11. Contrary to the PCRA court's finding, however, these different facts do not affect the applicability of *Veon*'s holding to the instant case. The applicability of *Veon* to any given case does not turn on whether (1) the victim's loss was "precisely ascertainable"; (2) the victim is "specific" and/or direct; or (3) the defendant's criminal conduct served his or her pecuniary versus non-pecuniary interest. Rather, the critical determination is whether the person/entity designated to receive the restitution ordered is a "victim" for purposes of Section 1106 and Section 11.103 of the CVA. *See Veon*, 150 A.3d at 454. The *Veon* Court explained as follows:

_____

[6] To the extent that the PCRA court, on page 11 of its PCRA Order, states that a political subdivision is defined as a "person" under the Statutory Construction Act, the court is referring to the following passage from *Veon*: "[T]he Statutory Construction Act … defined 'person' to include 'a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person.' 1 Pa.C.S. § 1991." *Veon*, 150 A.3d at 450.

Notwithstanding any legislative expansion of the definition of "victim," it is clear that the plain text of Section 11.103 still envisages "victims" as "persons" commonly understood. A "victim" under Section 11.103 must be "a direct victim," *i.e.*, an "*individual*" who has suffered injury, death, or loss of earnings; or a "child," "parent," "guardian," or "family member." *Every relevant noun unequivocally describes a **human being, not a government agency***, and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words. There can be no serious doubt that DCED, the agency designated to receive the restitution ordered in this case, does not qualify as a direct victim. And neither, of course, is DCED a parent, guardian, child, or family member of a homicide victim. Although Subsection 1106(c)(1)(i)'s provisions regarding "victims" and "other government agenc[ies]" reveals that the General Assembly intended that restitution reach certain Commonwealth agencies in a manner that did not depend upon identifying such agencies as "victims," it nonetheless required first that the agency in question have provided compensation to a victim so defined. That is what necessitates our determination that DCED is not entitled to restitution in this case.

In short, to qualify for restitution under Subsection 1106(c)(1)(i), a Commonwealth agency either must be a victim as that term is used in that subsection or must have reimbursed a victim[,] as defined by Section 11.103, directly or by paying a third party on behalf of the victim. DCED, itself, cannot be a victim under Section 11.103.

*Veon*, 150 A.3d at 454 (emphasis added).

In the instant case, pursuant to the reasoning of *Veon*, Bethlehem Township, a municipality, is not a "victim" under Subsection 1106(c)(1)(i), nor an entity that has reimbursed a victim as defined by Section 11.103. *See id.* at 454-55; *see also W. Indies Mission Appeal*, 128 A.2d 773, 778 (Pa. 1957) (observing that a "municipality is a governmental agency of the State, vested by the State with a part of its sovereignty, and employed

in aiding the State in matters of government and the execution of its laws[.]").  Moreover, though Bethlehem Township, unlike the DCED in *Veon*, was the direct victim of Kearns's criminal conduct, the *Veon* Court emphasized that the definition of "direct victim" contained in 18 Pa.C.S.A. § 11.103 is "an '**individual**' who has suffered injury, death, or loss of earnings …."   *Veon*, 150 A.3d at 454 (emphasis added); *see also id.* (stating that the definition of "direct victim" "unequivocally describes a human being, not a government agency ….").

Accordingly, we are constrained to rule that Kearns's sentence of restitution to Bethlehem Township is illegal, and must be vacated.[7, 8]  *See*

_____

[7] In so holding, we recognize the PCRA court's frustration that "to absolve [Kearns] of his criminal responsibility for the theft perpetrated on Bethlehem Township[,] simply because the victim, a recognized 'person' under the law, is not in human form," PCRA Order, 8/31/17, at 12, seems unjust. Nevertheless, we are bound by *Veon*.  *Accord Veon*, 150 A.3d at 454-55 (stating that although "those who unabashedly divert public monies to serve their own [] interests may not be subject to the same restitutionary obligations imposed upon those who victimize individuals[,] … to rule otherwise would require us to discard the language of the statute in pursuit of its spirit.  Should the General Assembly wish to rectify this apparent gap in its restitution scheme, it may do so.").

[8] We additionally note that the Commonwealth is seeking to recoup the stolen funds from Kearns and his co-defendant via civil actions.  *See Commonwealth v. Kearns*, 150 A.3d 79, 86 (Pa. Super. 2016); *but see also id.* (wherein this Court explained that, at Kearns's resentencing hearing, the prosecutor represented as follows concerning the ordered restitution:   "Future restitution [] seemed doubtful, the prosecutor concluded, given the defendants' bankruptcy filings and the defensive postures they assumed in various civil actions filed against them, where they have made no offers of settlement.").

***Veon***, 150 A.3d at 455-56; ***see also Commonwealth v. Berry***, 167 A.3d 100, 110 (Pa. Super. 2017) (applying ***Veon*** and ruling that the defendant's sentence was illegal insofar as it ordered him to pay restitution to the Commonwealth, where he, a former court of common pleas judge, had unlawfully used his judicial staff and court resources to further his own pecuniary interests). Moreover, because Kearns's restitution was a critical component of the trial court's overall sentencing scheme, we vacate his judgment of sentence and remand for resentencing. ***See Veon***, 150 A.3d at 456; ***see also Berry***, 167 A.3d at 110.

Based on the foregoing, we vacate Kearns's judgment of sentence and remand for resentencing consistent with this Memorandum.

PCRA Order reversed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/18

- 7 -

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                                 :
            v.                                   :   C-0048-CR-0829-2012
                                                 :
ROBERT J. KEARNS,                                :
            Defendant.                           :

## ORDER OF COURT

**AND NOW,** this _____31st_____ day of August 2017, Defendant Robert J. Kearns' "Post-Conviction Relief Act Petition Pursuant to Title 42 Pa.C.S. §9501 et seq." is **DENIED.**

### STATEMENT OF REASONS

### Procedural Background

On February 6, 2012, Defendant Robert J. Kearns was arrested and charged with Theft by Failure to Make Required Disposition of Funds Received at 18 Pa. C.S.A. § 3927(a), conspiracy to commit the same at 18 Pa. C.S.A. § 903(c), and Misapplication of Entrusted Property and Property of Government or Financial Institutions at 18 Pa. C.S.A. § 4113(a). The charges arose out of allegations stemming from an agreement executed on or about July 2, 2007 between Bethlehem Township ("Township") and Municipal Energy Managers, Inc. ("MEM") in which Defendant and his co-defendant were sole shareholders. Pursuant to that agreement, MEM was to provide the Township with a municipal street lighting system. Attendant with the agreement, the Township

issued a check to MEM in the amount of Eight Hundred Thirty-Two Thousand Four Hundred Sixty Dollars ($832,460.00) on July 3, 2007. The check was deposited into MEM's corporate account two days later.

On October 1, 2007, the Defendants wrote personal checks to themselves from the MEM account, totaling Nine Hundred Seventy-Five Thousand Six Hundred Four Dollars ($975,604.00). Over the next two years, little work was done in furtherance of MEM's contractual responsibilities, and on February 23, 2010, the Solicitor for the Township filed a civil suit against MEM, which revealed the personal checks written to Defendant and his co-defendant in October 2007.

In January 2010, with performance on the contract still undelivered, the Honorable Kimberly McFadden entered an order submitting the matter to a grand jury. An investigation ensued, and on January 26, 2012, the grand jury returned a presentment recommending that Defendant and his co-defendant be arrested and charged.

The presentment was accepted on January 30, 2012, and on February 6, 2012, the Commonwealth filed a criminal complaint, and an arrest warrant was issued and executed. Pretrial motions were filed and disposed of, and on January 11, 2013, following a trial by a jury of his peers, the Defendant was found guilty of the charge of Theft by Failure to Make Required Disposition of Funds Received at 18 Pa. C.S.A. § 3927(a) and acquitted on the remaining charges. Following serial requests for continuation of his sentencing

2

proceeding, the Defendant was sentenced on April 19, 2013, at which time he was ordered to serve a term of sixteen (16) to sixty (60) months' incarceration in a state correctional institution, followed by a period of sixty (60) months state probation, and he was ordered to pay restitution to Bethlehem Township in the amount of Eight Hundred Thirty-Two Thousand Four Hundred Sixty Dollars ($832,460.00).

The Defendant fled a timely post-sentence motion, the  motion was granted, and on June 4, 2013, the undersigned resentenced the Defendant to a period of six (6) to twelve (12) months incarceration followed by sixty (60) months' probation, a Two Thousand Five Hundred Dollar ($2500) fine, and restitution payable to Bethlehem Township in the amount of Eight Hundred Thirty-Two Thousand Four Hundred Sixty Dollars ($832,460.00). Defendant filed an appeal to the Superior Court on June 7, 2013, and a motion for reconsideration of sentence on June 13, 2013. On July 31, 2013, the motion for reconsideration was granted, and the undersigned amended the probationary portion of Defendant's sentence to a period of twelve (12) months. On August 1, 2013, Defendant filed an appeal from the July 31, 2013 sentence.

On review, the Superior Court held in separate opinions from the respective appeals that the undersigned had properly vacated the original sentence and properly resentenced the Defendant on July 31, 2013, but it vacated probationary portion of the sentence and remanded for resentencing.

3

That resentencing occurred on December 11, 2015, at which time the undersigned amended the sentence to six (6) to twelve (12) months' incarceration, and payment of restitution as previously ordered. The Defendant filed a motion for reconsideration of sentence on December 21, 2015, and the same was denied by an order entered on December 23, 2015. Thereafter, Defendant once again appealed to the Superior Court, which affirmed this Court's sentence on November 7, 2016. On November 28, 2016, the Defendant filed petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on April 20, 2017.

With the exception of periods from April 19, 2012 through May 8, 2013 and June 12, 2013, the Defendant was on bail pending the disposition of his appeals. However, following the Supreme Court's April 20, 2017 denial of Defendant's petition for allowance of appeal,[1] on or about May 1, 2017, the Commonwealth filed a motion to revoke Defendant's bail. The Defendant responded to the motion on May 11, 2017, with an answer and new matter, alleging the illegality of the restitution portion of his sentencing order. Concurrently, the Defendant filed a "Motion to Vacate Sentence and Vacate $832,460.00 Restitution Payable to Bethlehem Township" and a brief in support of the same.

---

[1]      Two separate Supreme Court orders bearing the same appellate docket number and a date of April 20, 2017 Order were filed in this Court on May 15, 2017 and  May 19, 2017 respectively.

4

The Court heard the motions on May 12, 2017, granting the Commonwealth's motion to revoke bail, and denying Defendant's motion to vacate sentence. Accordingly, the Defendant was remanded to Northampton County Prison to serve his sentence.

On June 1, 2017, the Defendant filed the "Post-Conviction Relief Act Petition Pursuant to Title 42 Pa. C.S.A. § 9501 et seq," ("PCRA") now before the Court. The sole issue raised in the PCRA is the legality of the restitution portion of the Defendant's sentence pursuant to prevailing case law. A conference was held on June 23, 2017, and the matter was praeciped to the Argument Court list of August 29, 2017. Argument having been heard and briefs having been filed, the PCRA is now ready for disposition.

### Discussion

By the instant petition, the Defendant urges that the restitution portion of his sentence, pursuant to which he is ordered to pay in the amount of Eight Hundred Thirty-Two Thousand Four Hundred Sixty Dollars ($832,460.00) to Bethlehem Township, is illegal because the Township is not a victim eligible to receive restitution under the law. In furtherance of this assertion, Defendant relies on a series of statutes and the Pennsylvania Supreme Court's decision in Commw. v. Veon, 150 A.3d 435 (Pa. 2016).

In Veon, the defendant, a member of the Pennsylvania House of Representatives representing Beaver County, was charged and convicted on one count of restricted activities under 65 Pa. C.S.A. § 1103(a); two counts

of theft by unlawful taking at 18 Pa. C.S.A. § 3921(a); two counts of theft by deception at 18 Pa. C.S.A. § 3922(a)(1); two counts of theft by failure to make required disposition of funds received at 18 Pa. C.S.A. § 3927(a); two counts of misapplication of entrusted property and property of government or financial institutions at 18 Pa. C.S.A. § 4113(a), and one count of conspiracy incident to the theft by unlawful taking at 18 Pa. C.S.A. § 903 arising out of a scheme involving his legislative offices and a shell non-profit organization he ran. Commw. v. Veon, 150 A.3d 435, 440-1 (Pa. 2016).

At the time of his sentencing, Mr. Veon was ordered in pertinent part to pay One Hundred Nineteen Thousand Dollars ($119,000.00) in restitution. At a subsequent proceeding, the amount of restitution as adjusted upward, and it was made payable to the Pennsylvania Department of Community and Economic Development ("DCED"), which had provided the shell non-profit with the bulk of its funding. Veon appealed his sentence, which the Superior Court affirmed in part and remanded in part with respect to the amount of the restitution.

Veon then filed a timely appeal to the Supreme Court of Pennsylvania, which granted review, in part to determine whether the DCED was legally entitled to receive the ordered restitution. In resolving that question, the Court began by closely examining § 1106 of the Crimes Code, relating to restitution. In particular, the Court examined subsections (a), (c), and (h) of § 1106, providing as follows:

6

(a) General Rule. – Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

. . .

(c) Mandatory restitution.--

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

**(A)** The victim.
(B) The Crime Victim's Compensation Board.
(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.
(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

. . .

7

(h) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
. . .
"Victim." As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.[1] The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa. C.S.A. § 1106(a), (c), (h).

The Court then examined former § 479.1, set forth in the Crime Victims Act at 18 P.S. § 11.103, which defines "victim" as:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:
Chapter 25 (relating to criminal homicide).
Section 2702 (relating to aggravated assault).
Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

The same section defines "direct victim" as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." Id.

8

Pursuant to these definitions, the Court took the position that restitution was only available to individual victims, which they interpreted as human beings, and government agencies and insurance companies that have provided reimbursement to a human victim for their losses. Accordingly, because the DCED did not fall into one of these categories, the Court determined that it was not entitled to restitution. In support of his PCRA, the Defendant in the instant case argues that the holding of Veon requires that the restitution portion of his sentence be vacated.

By way of opposition, the Commonwealth argues that Veon is a narrow ruling based on a set of facts that are readily distinguishable from the instant case, and therefore inapplicable. Initially, the Commonwealth first notes that in framing the question before it, the Court in Veon stated that they were charged with determining "whether the Commonwealth was eligible to receive restitution *under the circumstances of [the] case*." Commw. v. Veon, 150 A.3d 435, 448 (Pa. 2016) (emphasis added).

In an effort to draw a clear distinction between Veon and the instant case, the Commonwealth notes that the restitution ordered in Veon was based on an estimated calculation of intangible political gain inuring to Veon as a result of his criminal activity. By contrast, in the instant case, the amount of restitution was the exact amount of money lost by Bethlehem Township as a result of their contract with MEM. Essentially, the Commonwealth is arguing that Bethlehem Township's loss was the root of, and not incident to, the

9

charge upon which Defendant was convicted, and they were the specific victim. Whereas in <u>Veon</u>, as the Commonwealth notes in their brief, "the restitution amount did not represent an ascertainable figure of monetary gain to the defendant . . . [n]either was it an ascertainable loss to a specific "victim."" <u>Commonwealth's Memorandum of Law Contra Petitioner's Petition for Post Conviction Relief Pursuant to Pa. C.S. §9501 et seq.</u> at 4.

The Commonwealth further asserts that <u>Veon</u> is distinguishable because it involved restitution to a Commonwealth Agency; whereas, in the instant case, the victim in this case is a political subdivision. The Commonwealth suggests that this distinction is dispositive of the restitution issue because the former is specifically excluded, and the latter is specifically included in the definition of "person" under the Statutory Construction Act. The Act defines a "person" as including "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." 1 Pa. C.S.A. § 1991.

Alternatively, the Commonwealth urges while <u>Veon</u> was decided under the mandatory restitution provisions of 18 Pa. C.S.A. §1106(c) which appear to turn on the definition of a "victim," the Court may order restitution under §1106(b) relating to restitution as a condition of probation or parole, which, like the general rule set forth at §1106(a), makes no reference to a "victim." <u>See Commw. v. Holmes</u>, 155 A.3d 69, 78 (Pa. Super. 2017) (Stating that

10

"when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim . . . Such sentences are encouraged and give the trial court the flexibility to determine all the direct and indirect damages caused by a defendant and then permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way . . . Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation.")

While the Court agrees with the Commonwealth that it could set aside the parties' arguments under Veon and order restitution under 18 Pa. C.S.A. § 1106(b), upon consideration of the foregoing arguments, the relevant case law, and the relevant statutory provisions, the Court finds that Bethlehem Township is eligible to receive restitution under 18 Pa. C.S.A. § 1106(c).

In contrast to Veon, which involved an imprecise amount of restitution calculated to punish the non-pecuniary gains realized by the defendant as a result of his criminal conduct, the restitution ordered in this case represents a specific amount of money taken from a specific victim. As per the Statutory Construction Act, a political subdivision is a 'person,' with the legal rights and duties that attach. It is pursuant to those rights and duties that Bethlehem Township entered into a contract with MEM, that it paid funds to MEM which

11

were subsequently criminally misappropriated by Defendant and his co-defendant, and which resulted Bethlehem Township sustaining a defined loss in the amount of Eight Hundred Thirty-Two Thousand Four Hundred Sixty Dollars ($832,460.00). The Court believes that to absolve the Defendant of his criminal responsibility for the theft he perpetrated on Bethlehem Township simply because the victim, a recognized 'person' under the law, is not in human form, would be a gross misconstruction of the legislative intent of the statutory provisions implicated in this matter, and it would be a broad overreading of Veon, which involved an imprecise restitution amount to a third party not contemplated as entitled to restitution under 18 Pa. C.S.A. § 1106.

Veon is certainly applicable to restitution cases generally insofar as it made clear that the current statutory scheme provides for mandatory restitution to victims, The Crime Victim's Compensation Board, and government agencies or insurance companies which have provided reimbursement to a victim as the result of a defendant's criminal conduct. Moreover, it correctly applied the statutory scheme to the facts of that case in determining that the DCED was not entitled to restitution because it was neither a direct victim nor had it provided reimbursement to a direct victim. Veon clearly illustrates that the statutory scheme draws a clear line between providing restitution personal injury and property loss occasioned on victims

12

of crime and the third parties that compensate them directly for those losses, and losses which are incidental or tangential to criminal conduct.[2]

However, this being a case where a direct victim has suffered a precisely ascertainable loss, the denial of restitution in this matter would require a strained reading of Veon, and would yield an absurd result. Commw. v. Allied Bldg. Credits, Inc., 123 A.2d 686, 692 (Pa. 1956) ("In construing a statute the courts must keep in mind that the Legislature is not presumed to have intended an absurd or unreasonable result . . . good sense and practical utility must be considered . . . [and] statutes should receive a sensible construction and should be construed, if possible, so that absurdity and mischief may be avoided.") Consequently, Defendant's "Post-Conviction Relief Act Petition Pursuant to Title 42 Pa.C.S. §9501 et seq." is **DENIED.**

BY THE COURT:

LEONARD N. ZITO,                                        S.J.

---

[2] In recognition of this distinction, the Court in Veon took special care to cite to the 1997 decision of the Superior Court in Commw. v. Figueroa, 691 A.2d 487 (Pa. Super. 1997), wherein the Court denied restitution to the Department of Corrections for medical care provided to an inmate who ultimately died at the hands of another inmate, and noted that:

[t]o implicate the myriad of governmental agencies which provide services to people . . . as being entitled to *reimbursement* would create chaos in an already difficult restitution system . . . Children and Youth Services, mental health agencies, every hospital and clinic in Pennsylvania, the Departments of Welfare, Education and Corrections, the Department of Health and others of the more than 230 departments under state control in Pennsylvania[,] [a]ll of these agencies, in one form or another, receive state and/or federal aid and all, at one time or another, may be impacted by additional costs to service a victim.

Commw. v. Figueroa, 691 A.2d 487, 490 (Pa. Super. 1997).

13