J-A02025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND J. LEE | : | |
| | : | |
| Appellant | : | No. 78 MDA 2018 |

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005822-2016

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                                **FILED JUNE 07, 2019**

Appellant, Raymond J. Lee, appeals from the August 10, 2017 Judgment of Sentence entered in the Lancaster County Court of Common Pleas following his jury conviction of Aggravated Assault and Conspiracy to Commit Aggravated Assault.[1]  Appellant challenges the sufficiency and weight of the evidence in support of his Aggravated Assault conviction, the discretionary aspects of his sentence, and the trial court's denial of his Motion for a Mistrial. After careful review, we affirm.

The Commonwealth charged Appellant with the above crimes following a violent altercation in the early morning hours of December 25, 2015, in which Appellant and his co-defendants, Francisco Camacho ("Camacho"),

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and 903, respectively.

Joshua Ellis ("Ellis"), Anthony Maglietta ("Maglietta"), and Alexander Rodriguez-Cruz ("Crus"), violently assaulted the victim, Shaliek Rivera (the "victim"), and left him seriously injured.[2]

The relevant facts, as gleaned from the record, including the Notes of the Testimony, are as follows. Maglietta owned Molly's Pub and Carry-Out, a bar and bottle shop located on the corner of Shippen and Chestnut Streets in Lancaster. Ellis, Cruz, and Appellant worked for Maglietta as security guards at Molly's Pub. Just before 1:00 AM on December 25, 2015, Appellant, Ellis, Maglietta, and Cruz, were outside of Molly's Pub, when the victim approached the group. The victim greeted Ellis, and Appellant approached them.[3] Appellant and the victim engaged in a short conversation during which Appellant became "animated" and proceeded to strike the victim violently on the head, while Cruz, Maglietta, and Ellis stood behind Appellant, watching the assault. The strike immediately rendered the victim unconscious and prone. The victim remained unconscious and convulsing, lying partially in Shippen Street, for approximately 10 minutes. Eventually, the victim regained

---

[2] The jury also convicted Ellis, Maglietta, and Cruz of the same offenses. They have filed direct appeals of their Judgments of Sentence which are pending at Docket Numbers 1854 MDA 2017; 1869 MDA 2017; and 1845 MDA 2018, respectively. On May 12, 2017, Camacho entered an open guilty plea to one count of Robbery, 18 Pa.C.S. § 3701(a)(1)(v), at Docket No. CP-36-CR-806-2016, for which the trial court sentenced him on August 10, 2017, to a term of one to five years' incarceration. Camacho did not file a direct appeal from his Judgment of Sentence.

[3] Trial testimony indicated that Ellis and the victim were friends and had been roommates.

consciousness, stood up, and began to wander around, stumbling. The victim stumbled to a residence next door to Molly's Pub, which belonged to Maglietta, in an attempt to get help. Appellant, Cruz, Maglietta, and Ellis proceeded to run after the victim.

Appellant then grabbed the victim and threw him back to the ground, whereupon he punched and kicked the victim. The victim remained on the ground for an extended period of time, during which someone picked the victim's pockets.

The victim roused himself again and then attempted to enter a nearby vehicle. Appellant, in the presence of Cruz, Ellis, and Maglietta, again thwarted the victim's efforts to obtain help and sanctuary, by removing the victim from the vehicle. The men placed the victim over a brick planter next to the Carry-Out and all proceeded to beat, kick, and punch the victim into unconsciousness. When the men finished beating the victim, Appellant carried him to an area not far from Molly's Pub and left him there. The victim eventually stumbled back to Molly's Pub and fell down across the street from Molly's Pub. The victim laid there for approximately 20 minutes before Appellant, Ellis, Maglietta, and Cruz carried him to a secluded area behind Maglietta's truck. The victim laid there, again unconscious, for approximately another 30 minutes before he regained consciousness, and wandered, disoriented, back across the street. Appellant, Ellis, Maglietta, and Cruz refrained from assaulting the victim any further, but they did not provide him with any assistance.

The victim then proceeded to wander to a house on Chestnut Street whereupon the residents inside alerted the police. At first, the police took the victim into custody on suspicion of public drunkenness but then, upon realizing that the victim was seriously injured, called EMS to transport the victim to the hospital as a trauma patient.

The victim sustained serious injuries from the assaults including bleeding, swelling, and bruising of his brain, and a fractured nose. He remained unconscious in the hospital for approximately one week following the attack. The victim also had bone fragments in his ear, which affected his equilibrium and prevented him from moving on his own for two or three months. At the time of trial, he continued to suffer from short-term memory loss and had no recollection of the attack.

Lancaster Police obtained videotaped footage of the incident from Molly's Pub's security cameras and from the Lancaster Community Safety Coalition, a group that has installed security cameras around Lancaster City.[4,][5]

_____

[4] One security camera belonging to the Lancaster Community Safety Coalition is located at the intersection of Chestnut and Shippen Street, across from Molly's Pub.

[5] The Commonwealth also charged Maglietta with one count of Tampering with Evidence, 18 Pa.C.S. § 4910(1), in connection with Maglietta's attempt to tamper with and/or conceal the images of the incident recorded by the cameras at Molly's Pub. The jury convicted Maglietta of that charge, but the trial court subsequently granted Maglietta's Motion for Judgment of Acquittal as to that conviction.

The Commonwealth charged the men as co-conspirators. On March 17, 2016, the Commonwealth filed a Notice of Intent to Consolidate. On June 13, 2016, Cruz filed a Pretrial Motion to Sever, which the court denied.

A three-day joint jury trial commenced on May 22, 2017. The Commonwealth presented the testimony of Police Officer Herbert Watson, Detective Sergeant John Duby, Sergeant Michael John Gerace, and Sergeant Ronald William Breault, III, all from the Lancaster City Police Department. The victim also testified. In addition, the court admitted the videotaped footage of the incident into evidence. Maglietta testified on his own behalf and presented the testimony of one character witness. Appellant presented the testimony of a witness to the crime—his son, Jobe Lee. Neither Cruz nor Ellis presented any evidence or testimony.

On May 25, 2017, the jury convicted Appellant of Aggravated Assault and Conspiracy. The trial court ordered a Pre-Sentence Investigation ("PSI") Report. On August 10, 2017, after consideration of the PSI Report and argument of counsel, the trial court sentenced Appellant to an aggregate term of ten to twenty years' incarceration, and ordered Appellant to pay $7,786.37 in restitution.[6]

Appellant filed a timely Post-Sentence Motion in which he challenged the sufficiency and weight of the evidence, the court's denial of his Motion for a

_____

[6] Appellant's sentence was comprised of one term of ten to twenty years' incarceration for his Aggravated Assault conviction and a concurrent term of four to eight years' incarceration for his Conspiracy conviction.

Mistrial, and the discretionary aspects of his sentence. On December 11, 2017, the trial court denied Appellant's Post-Sentence Motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

1. Did the sentencing court manifestly abuse its discretion in imposing an above the aggravated range sentence constituting the maximum sentence permissible by law and a disparate sentence compared to similarly situated co-defendants which was so manifestly excessive as to constitute an abuse of discretion without considering any mitigating factors presented by counsel at the time of [Appellant's] sentencing?

2. Did the trial court err when it denied [Appellant's] [M]otion for [M]istrial following the admission of highly prejudicial evidence during testimony of a co[-]defendant?

3. Did the trial court err when it denied [Appellant's] Post-Sentence Motion arguing that the verdict was against both the weight and sufficiency of the evidence?

Appellant's Brief at 6.

In his first issue, Appellant claims the trial court abused its discretion in imposing a sentence "above the aggravated range," which was "disparate compared to similarly situated co-defendants," without adequately considering mitigating factors.[7] *Id.* at 18.

---

[7] The court sentenced Appellant to a statutory-maximum ten to twenty year term of incarceration.

- 6 -

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000).

Prior to reaching the merits of a discretionary sentencing issue, we must determine whether: (1) appellant has filed a timely notice of appeal; (2) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) appellant's brief has a fatal defect; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Here, Appellant filed a timely Notice of Appeal. Our review of Appellant's Motion for Reconsideration of Sentence indicates that he preserved his claim that the court abused its discretion in imposing an aggravated-range sentence. Appellant has also included a separate Pa.R.A.P. 2119(f) Statement in his Brief to this Court. We, thus, consider whether the issue Appellant preserved raises a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13 (citation and quotation omitted).

- 7 -

"We have held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012). Similarly, a claim that insufficient reasons existed to support an upward departure from the sentencing guidelines raises a substantial question. ***Commonwealth v. Kearns***, 150 A.3d 79, 85 (Pa. Super. 2016). A claim of an alleged "unexplained disparity between [an appellant's] sentence and that of a co-defendant" also raises a substantial question. ***Commonwealth v. Cleveland***, 703 A.2d 1046, 1048 (Pa. Super. 1997). Thus, we proceed to review the merits of Appellant's claim that his aggravated range sentence was excessive and an abuse of the court's discretion.

After a careful review of the parties' arguments and the record, we conclude that this issue warrants no relief, and we adopt the comprehensive Opinion of the Honorable Merrill M. Spahn, Jr. as to this issue as our own. ***See*** Trial Ct. Op., 5/15/18, at 8-12 (detailing its extensive consideration of Appellant's PSI report; mental health report; age; prior criminal history; positive employment history; educational history; family background; difficult upbringing; involvement in the community; the severity of the crime; the principal role Appellant played in the crime; and rehabilitative needs when fashioning Appellant's individualized sentence, and concluding that Appellant's sentence did not violate the fundamental norms underlying the sentencing process). ***See also*** N.T. Sentencing, 8/10/17, at 13-21.

In his second issue, Appellant challenges the trial court's denial of his Motion for Mistrial based on the court's admission of allegedly prejudicial evidence of Appellant's alleged gang involvement. Appellant's Brief at 23. Appellant has not specified the precise testimony he alleges was prejudicial; rather he identifies the evidence only as "testimony of his co[-]defendant and an officer's rebuttal testimony who each testified to numerous uncharged bad acts, alleged crimes including gang involvement and activity in which [Appellant] was alleged to be involved."[8] *Id.*

Before we reach the merits of this issue, we must consider whether Appellant has preserved it for appeal.

The Pennsylvania Rules of Evidence require that, in order to advance a claim of error in a ruling to admit or exclude evidence, a party must make a specific and timely objection. *See* Pa.R.E. 103(a)(1). "We have long held that '[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal.'" *Commonwealth v. Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citing, among others, Pa.R.A.P. 302(a)).

The trial court summarized the events giving rise to this claim as follows:

By way of backgrounds, during his opening remarks, counsel for [] Maglietta told the jury that [] Maglietta owned Molly's Pub and hired [] Ellis and [Appellant] one year prior to the instant assault. Counsel for [] Maglietta continued by stating that [] Maglietta only subsequently learned that the individuals he had hired were

_____

[8] Although Appellant claims that he "raised an oral Motion in *Limine* prior to trial, specifically asking the trial court to preclude such testimony," he does not indicate where he placed an objection to the admission of this testimony on the record at trial. Appellant's Brief at 23-25.

members of a gang and they started to wear their gang-related colors instead of their work uniforms. Counsel for [] Maglietta claimed that [] Maglietta was previously beaten by these individuals and only minimally participated in this assault, based on a fear for his own life.

In rebuttal, the Commonwealth elicited testimony from Sergeant Michael Gerace, without objection, regarding a photograph from [Appellant's] Facebook account depicting two co-defendants eating a meal together, in which one was wearing a black t-shirt with red letters, SMM, on the front and the other was wearing a red t-shirt. Again, without any objection, Sergeant Gerace testified that the significance was that the letters on the shirt stand for Sex, Money, Murder and the red coloring of the other shirt was indicative of the representative set of the Bloods group or street gang in which they associate. The Commonwealth sought to publish [the photograph] to the jury and did so without any objection. Sergeant Gerace further testified, in direct response to a cross-examiniation question posed by counsel for co-defendant [] Ellis, that [] Ellis was in a gang at the time of the assault.

In considering [Appellant's] claims in this regard, it must be initially noted that [Appellant] failed to seek pre-trial severance of his trial from that of the co-defendants and failed to offer a timely objection to the admission of such challenged evidence at trial. Only upon the completion of Sergeant Gerace's lengthy testimony did counsel for [Appellant] request a mistrial and severance as a result of the admission of such testimony regarding alleged gang activity and involvement.

Trial Ct. Op. at 12-13 (citations to the Notes of Testimony omitted).

Our review of the Notes of Testimony confirms that Appellant did not preserve this claim by lodging a timely objection at trial to the admission of the evidence he vaguely refers to in his Brief. Appellant has, thus, waived this issue for appellate review.

- 10 -

In his final issue, Appellant challenges the sufficiency and weight of the evidence in support of his Aggravated Assault conviction.[9, 10]

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

Under Pennsylvania law, "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury

_____

[9] Although Appellant purports to challenge the weight and sufficiency of the evidence in support of both his Aggravated Assault and Conspiracy convictions, Appellant has presented argument in his Brief pertaining only to his Aggravated Assault conviction. Thus, we address the sufficiency and the weight of the evidence in support of this conviction alone.

[10] We note with displeasure that the argument section of Appellant's Brief combines his sufficiency and weight of the evidence challenges into a single claim. ***See*** Appellant's Brief at 25-28. For the sake of clarity, we regard and discuss these challenges as separate claims.

intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Intent to cause serious bodily injury can be proven by wholly circumstantial evidence, and may be inferred from acts or conduct, or from attendant circumstances. *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).[11] "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) (citations and quotation marks omitted).

With respect to his Aggravated Assault conviction, Appellant baldly claims that the Commonwealth failed to prove the element of "serious bodily injury" because it "did not introduce any medical testimony or introduce any

---

[11] "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i).

medical records as to the alleged injuries sustained during the incident."
Appellant's Brief at 27.

The trial court summarized the evidence offered by the Commonwealth
to prove that Appellant had caused the victim "serious bodily injury" as
follows:

> The Commonwealth presented evidence that [Appellant] was
> actively and principally involved in the assaults upon the Victim.
> Sergeant Michael John Gerace, a patrol sergeant with the
> Lancaster City Bureau of Police, where he has been employed for
> seventeen years, testified that during the investigation he
> reviewed surveillance footage from the Lancaster Community
> Safety Coalition of the assault in this matter. . . . Sergeant Gerace
> [testified that he] observed [Appellant] punch the victim on the
> left side of his face, had pushed the victim to the ground, and had
> further punched and kicked the victim in the face. Sergeant
> Gerace explained that the video footage showed [Appellant] scoop
> up the victim, while being followed by co-defendants [] Ellis and
> [] Rodriguez-Cruz. Sergeant Gerace described the victim, at this
> point [in] the assault as "a virtually unconscious body." . . .

> [T]he Commonwealth [also] presented the testimony of Officer
> Herbert Watson of the Lancaster City Bureau of Police. Officer
> Watson testified that he observed serious injuries on the victim's
> face and body so he called for an ambulance and [the victim] was
> treated as a trauma patient. Officer Watson further testified that
> the [v]ictim was having difficulty standing and communicating as
> a result of his injuries.

> At trial, the victim testified that he suffered multiple injuries,
> including black eyes, fragmented bones in his ears, injuries to his
> nose, pain to his ribs, bleeding on his brain, the inability to
> properly walk for several months, and lingering memory issues
> [a]s a result of this vicious and prolonged assault.

Trial Ct. Op. at 21-22.

Following our review of the evidence, particularly the testimony of the
victim, we agree with the trial court that, when viewed in the light most

favorable to the Commonwealth as verdict-winner, the Commonwealth presented sufficient evidence from which the jury could reasonably conclude that Appellant had caused the victim "serious bodily injury" and, thus, committed the offense of Aggravated Assault. Moreover, Appellant has not cited any authority for his argument that expert medical testimony or the victim's medical records were necessary to prove that the victim suffered "serious bodily injury." Appellant's claim, therefore, fails.

Last, Appellant challenges the weight the jury gave to the Commonwealth's "weak" evidence of the victim's serious bodily injury and its reliance on "video evidence." Appellant's Brief at 28.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46.

"Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

With respect to this issue, the trial court found that "it is quite apparent that the jury resolved the relevant credibility issues in favor of the witnesses presented by the Commonwealth[.]" Trial Ct. Op. at 24. It further found that Appellant "has failed to demonstrate that the verdict in this matter served to shock one's sense of justice." *Id.* We agree.

Appellant essentially asks us to reassess the credibility of the Commonwealth's witnesses and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

Judgment of Sentence affirmed. We direct the parties to attach a copy of the trial court's May 15, 2018 Opinion to any future filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2019

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA

vs. : No.   CP-36-CR-0005822-2016

RAYMOND J. LEE, III :

**OPINION PURSUANT TO RULE 1925(a) OF THE
PENNSYLVANIA RULES OF APPELLATE PROCEDURE**

BY: SPAHN, JR., J.

Defendant has filed a direct appeal to the Superior Court of Pennsylvania challenging the discretionary aspects of his sentence; the trial court's denial of his motion for a mistrial based upon the admission of alleged prejudicial evidence; and, the sufficiency and weight of the evidence presented at trial. Said claims will be thoroughly addressed herein.

On January 6, 2016, a Criminal Complaint was filed charging Defendant with allegedly having committed one count of Aggravated Assault[1]; one count of Hindering Apprehension or Prosecution[2]; and, one count of Criminal Conspiracy to Commit Aggravated Assault[3] arising out of an incident that occurred on December 25, 2015 in Lancaster City, Lancaster County, Pennsylvania.

On May 19, 2017, the instant matter proceeded to trial before the below signed member of the trial court and a jury. On May 25, 2017, Defendant was found guilty on the charged counts of Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault. The additional count of Hindering Apprehension or Prosecution was *Nol prossed* by the Commonwealth. Additionally, by way of special inquiry, the jury unanimously found that the victim suffered serious bodily injury as the result

---

[1] 18 Pa. C.S. §2702(a)(1)
[2] 18 Pa. C.S. §5105(A)(3)
[3] 18 Pa. C.S. §903

of the instant offenses. The trial court ordered a Pre-Sentence Investigation and deferred sentencing pending the completion of said report.

The trial court sentenced Defendant on August 10, 2017 as follows:

Count I - Aggravated Assault - Not less than ten (10) years nor more than twenty (20) years incarceration with Defendant being responsible for the costs of prosecution

Count II – *Nol prossed* by the Commonwealth with costs placed on the County of Lancaster

Count III – Criminal Conspiracy to Commit Aggravated Assault - Not less than four (4) years nor more than eight (8) years incarceration with Defendant being responsible for the costs of prosecution

The sentences were imposed concurrent with one another. As such, the trial court imposed an aggregate sentence of not less than ten (10) years nor more than twenty (20) years incarceration. The court also set restitution in the amount of $7,786.37 and indicated Defendant was not eligible for participation in the RRRI initiative in light of the nature of the current offenses and noted that the Commonwealth was unwilling to waive said ineligibility. (N.T., Sentencing, August 10, 2017 at pp. 21-22).

Defendant filed a timely Post-Sentence Motion on August 21, 2017 requesting a motion for a new trial or judgment of acquittal. Defendant filed a Brief in Support of said motion on October 10, 2017. The Commonwealth filed a Brief in Response thereto on October 27, 2017. The trial court denied Defendant's Post-Sentence Motion by way of Court Order entered on December 11, 2017.

On January 9, 2018, Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania. By way of Court Order dated January 12, 2018, Defendant was directed to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of

Appellate Procedure. Defendant filed his Concise Statement of Errors Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) on January 31, 2018. As such, this matter is ripe for review.

## DISCUSSION

In his Concise Statement of Errors Complained of on Appeal, Defendant raises the following specific claims for appellate review:

1. The court erred by denying Defendant's Post-Sentence Motion requesting modification of Defendant's above the aggravated range sentence constituting an abuse of discretion.

2. The court erred by denying Defendant's Post-Sentence Motion moving for a new trial due to the admission of prejudicial evidence and judgement of acquittal.

3. The court erred by denying Defendant's Post-Sentence Motion where Defendant argued that the verdict was both against the weight of the evidence and sufficiency of the evidence.

(N.T, Concise Statement of Errors Complained of on Appeal filed on January 31, 2018).

## A.    DISCRETIONARY ASPECT OF SENTENCE

Based upon a review of Defendant's Post-Sentence motion and Brief in Support thereof, it appears to the court that Defendant is advancing challenges the discretionary aspects of his sentence alleging that the court abused its discretion in sentencing Defendant above the aggravated range of the guidelines and to the statutory maximum; failed to consider mitigating factors, while citing aggravating factors that were subsumed elements of the offenses; and, imposed a harsher sentence on Defendant than that of his co-defendants.

There is no automatic right to appeal regarding such claims. See, 42 Pa. C.S.A. § 9781; Commonwealth v. Colon, 102 A.3d 1033, 1042 (Pa. Super. 2014) (citing Commonwealth v. Hanson, 856 A.2d 1254, 1257 (Pa. Super. 2004)); see, Commonwealth v. Marts, 889 A.2d 608, 611 (Pa. Super. 2005). Before a court may consider a discretionary sentencing claim, a defendant must demonstrate

3

that: (1) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (2) a timely notice of appeal was filed; (3) Defendant fully complied with Pennsylvania Rule of Appellate Procedure 2119(f); and, (4) there was a "substantial question" that the sentence imposed was not appropriate under the Sentencing Code. 42 Pa. C.S.A. §9781(b); Colon, 102 A.3d at 1042-43.

In the instant matter, Defendant has, to date, satisfied the first two prerequisites. He preserved his claim by filing a timely post-sentence motion. Following this court's denial of said Motion, Defendant filed a timely Notice of Appeal.

This court can only assume that Defendant will likewise satisfy the requirements of Rule 2119(f) when he files his appellate brief to satisfy the third prerequisite.

As to the fourth prerequisite, the determination as to whether an issue constitutes a "substantial question" is to be "evaluated on a case-by-case basis." A substantial question must "advance a colorable argument" that the sentence imposed was either "inconsistent with a specific provision of the Sentencing Code; or … contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Cunningham, 805 A.2d 566, 574 (Pa. Super. 2002).

As noted, it appears to the Court that Defendant is presently raising three independent challenges to the discretionary aspects of Defendant's sentence in this matter. First, Defendant alleges that the court abused its discretion in sentencing Defendant above the aggravated range of the guidelines and to the statutory maximum. As Defendant's claim is suggestive that insufficient reasons existed to support the court's upward departure from the Sentencing Guidelines in the instant matter, the court concludes that Defendant has presented a substantial question in this regard. See, Commonwealth v. Kearns, 150 A.3d 79 (Pa. Super. 2016); Commonwealth v. Griffin, 804 A.2d 1 (Pa. Super. 2002).

Second, Defendant alleges that the court failed to consider mitigating factors, while citing aggravating factors that were subsumed elements of the offenses. As Defendant is seemingly alleging

4

that the court based Defendant's sentence solely on the seriousness of the offenses and failed to consider all relevant information, the court concludes that Defendant has presented a substantial question in this regard. Commonwealth v. Macias, 968 A.2d 773 (Pa. Super. 2014); Commonwealth v. Lawrence, 960 A.2d 473 (Pa. Super. 2008); Commonwealth v. Matroni, 923 A.2d 444 (Pa. Super. 2007).

Lastly, Defendant challenges the court's imposition of a harsher sentence on Defendant than that of his co-defendants. Challenges of such nature have been deemed by the Pennsylvania Superior Court to raise a substantial question inasmuch as a disparity between sentences imposed upon co-defendants does touch upon the fundamental norms which underlie the sentencing process. Commonwealth v. Cleveland, 703 A.2d 1046 (Pa. Super. 1997); Commonwealth v. Canfield, 639 A.2d 46 (Pa. Super. 1994). As such, the court concludes that Defendant has presented a substantial question in this regard.

The Pennsylvania Superior Court has set forth the general standard of review when considering a challenge to the discretionary aspects of a court's sentence as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgement. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Hyland, 875 A.2d 1175, 1184 (Pa. Super. 2005) (quoting Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999)). Our Supreme Court has stated that the rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it". Commonwealth v. Ward, 568 A.2d 1242, 1243 (Pa. 1990). See also, Commonwealth v. Jones, 613 A.2d 587, 591 (Pa. Super. 1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime.").

5

Moreover, the Supreme Court has determined that sentencing courts enjoy an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007). The Superior Court has embraced this principle stating that "the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review". Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2013).

Judges have the broad discretion to sentence up to and including the maximum sentence authorized by statute; the only line that a sentencing judge may not cross is the statutory maximum sentence. Commonwealth v. Gordon, 942 A.2d 174, 182 (Pa. 2007).

When reviewing a challenge to the discretionary aspects of a sentence, the appellate court should affirm the trial court's sentence unless it finds: "(1) that the guidelines were erroneously applied; (2) that the sentence, even though within the guidelines, is 'clearly unreasonable'; or (3) that the sentence, if outside the guidelines, is 'unreasonable. " Commonwealth v. Fiascki, 886 A.2d 261 (Pa. Super. 2005); 42 Pa. C.S.A. § 9781(c). To determine if a sentence is unreasonable, appellate courts must consider the circumstances of the offense, background and characteristics of the defendant, opportunity of the trial court to observe the defendant, the trial court's review of any presentence investigation, findings upon which the sentence was based, and sentencing guidelines promulgated by the Sentencing Commission. Commonwealth v. Moore, 617 A.2d 8 (Pa. Super. 1992); 42 Pa.C.S.A. § 9781(d). In Commonwealth v. Walls, 926 A.2d 957 (Pa. 2007), our Supreme Court declined to define "unreasonableness," but stated "we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently . . . especially when the unreasonableness inquiry is conducted using the proper standard of review." Walls, 926 A.2d at 964. As to sentencing guidelines, the Supreme Court stated: "the guidelines have no binding effect, create no

presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." Walls, 926 A.2d at 964-65. There is no requirement that courts sentence to the minimum confinement. *Id.* at 965. Rather, "trial courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines." Commonwealth v Mouzon, 812 A.2d 617 (Pa. 2002). A sentencing court may depart from the sentencing guidelines to fashion a sentence that takes into account protection of the public, rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to impact on the community. Commonwealth v. Warren, 84 A.3d 1092, 1097 (Pa. Super. 2014). A sentence above the aggravated range of the guidelines was not manifestly unreasonable where the court considered the defendant's prior criminal record, seriousness of the offense, young age of the victim, impact of the crime on the victim, the defendant's age, health, intelligence and maturity level, his work history, and his unsuccessful attempts at rehabilitation. Commonwealth v. Crork, 966 A.2d 585, 590-91 (Pa. Super. 2009). While factors already included in the sentencing guidelines may not be considered as the sole reason for increasing a sentence to the aggravated range, a trial court may use prior conviction history and other factors already included in the guidelines if they are used to supplement other extraneous sentencing information. Commonwealth v. Rush, 162 A.3d 530, 545-46 (Pa. Super. 2017).

Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Commonwealth v. Cevers, 546 A.2d 12, 18-19 (Pa. 1988); Commonwealth v. Ventura, 975 A.2d 1128, 1135 (Pa. Super. 2009).

In sentencing Defendant in the instant matter, the court was guided by an extensive pre-sentence investigation. In fashioning sentence, the court gave thoughtful consideration to: the penalties authorized by the Legislature; the Sentencing Guidelines in all applicable ranges, including the standard, aggravated and mitigating ranges; the facts and circumstances of these offenses; Defendant's actions after the occurrence of these offenses; Defendant's background and character; the contents of the pre-sentence investigation; the sentencing memorandum submitted by counsel for Defendant and the letters of support attached thereto; the comments of the attorney for the Commonwealth; the statements made by the victim's family and mother; the comments of defense counsel; the comments of Defendant; the rehabilitative needs of Defendant; the need for there to be a deterrence; and, the need for there to be protection of the entire community. (N.T., Sentencing Hearing, August 10, 2017 at pp. 14-15).

Defendant is forty years of age. Defendant obtained a GED certification and completed one year of study at Penn College on a basketball scholarship. Defendant subsequently received his Associate's Degree in Criminal Justice from Wilmington University. (N.T., Sentencing Hearing, August 10, 2017 at p. 15). The court noted that Defendant has no history of any sort of educational difficulties or behavioral difficulties while he was a student. Id.

The court noted that the Pre-Sentence Investigation, as well as the Sentencing Memorandum submitted by defense counsel, described a very difficult upbringing of Defendant. Defendant has two sisters, one of whom was tragically killed when Defendant was just fifteen years of age. Defendant was raised by unmarried parents, until at the age of five when Defendant witnessed his father pointing a loaded firearm at his mother and Defendant's father was holding Defendant as a shield while he watched his father shoot another man in Defendant's presence. Defendant has not had any true contact with his father since that time. As a result of this unfortunate violence, Defendant was placed into the foster care system and his sisters began to reside with their grandmother. At age 11, Defendant and his siblings

were given up by their mother and Defendant spent many years in foster homes and various juvenile placement facilities. (N.T., Sentencing Hearing, August 10, 2017 at pp. 15-16).

The court noted that Defendant has a previous criminal history, which includes numerous motor vehicle offenses from the State of Delaware; a 2006 conviction for Possession With Intent to Deliver a Narcotic from the State of Delaware; 2007 and 2008 violations of court supervision, Delaware; and, a 2010 conviction for Carrying a Concealed Weapon in the State of Delaware. (N.T., Sentencing Hearing, August 10, 2017 at p. 16).

The court considered the information about Defendant's marital history, noting that his first marriage lasted eight years and produced four children, and his current marriage has lasted ten years and produced one child. Defendant's current wife and this child are currently in the State of Kentucky. Defendant is also the father to five other children to different women, and Defendant spoke at length regarding the importance of family and maintaining a positive relationship with his children. (N.T., Sentencing Hearing, August 10, 2017 at pp. 16-17).

There was a very limited drug and alcohol history, indicating that Defendant began using alcohol in his twenties. This does not appear to have been problematic and merely social at best. There also appears to have been at least a two-year period of abstinence from usage of alcohol. There was some history of experimentation with marijuana in his twenties; however, there never seemed to be a need for any sort of formal treatment or counseling. (N.T., Sentencing Hearing, August 10, 2017 at pp. 16-17).

There was no notable mental health or emotional history noted for Defendant, and Defendant appears to be very active in his faith. Defendant also has a very positive employment history. From 2007 through 2009, Defendant worked for a security company located in Coatesville, Pennsylvania; from 2013 through 2015, Defendant worked in a security position at Molly's Pub. From the letters the court reviewed, there were some other jobs, at the very least for a period of time as a corrections officer

at a detention center, and there was some reference of employment at a billiards facility in Louisville, Kentucky. The court considered that Defendant previously provided voluntary services to the community, such as working with the Transitional Living Center in the City of Lancaster. Defendant was also involved with the Elk's organization in the City of Lancaster. As Defendant admitted, albeit inappropriate or foolish, he had been involved with The Bloods street gang for some period of time, although Defendant professes to have been disassociated therefrom after two years' involvement, which the court noted it had no reason to doubt. (N.T., Sentencing Hearing, August 10, 2017 at p. 18).

The court noted that, in defense counsel's Sentencing Memorandum prepared for Defendant, defense counsel's comments, and Defendant's own comments, Defendant does profess remorse for what occurred. While the court had no reason not to take Defendant at his word, the court could not help but wonder if that remorse is for the victim and his family, or if that remorse is for the current situation that Defendant and his family now face as a result of his conduct. The court recognized the unfortunate background Defendant faced as a young man and applauds him on some level that through perseverance he was able to obtain a quality education for himself and give himself a positive employment history; however, the court indicated that it cannot and will not ignore the fact and circumstances of the offenses for which Defendant was convicted. These offenses were more than an isolated assault. They were a connected series of vicious assaults over a relative extended period of time. The assault on the victim that early morning was severe, sustained, and absolutely senseless. It was very troubling to this court that, for a portion of that event, the victim was rendered unconscious as a result of Defendant's blow. Defendant physically carried the unconscious body of the victim across the street, dumped his body on an adjacent sidewalk, and left him there to succumb to his own fate while Defendant and his co-conspirators seemed to be amused, laughing, and enjoying their own conduct. The victim remained unconscious for a relatively extended period of time and when he gathered himself to regain

10

consciousness, Defendant and his co-conspirators rewarded him by beating him again. The court notes that Defendant's conduct that evening in no way can be described any way other than absolutely inhumane and there is no place for such conduct in a civilized society. (N.T., Sentencing Hearing, August 10, 2017 at pp. 19-21).

Although Defendant and his co-conspirators are jointly liable under the law, the court made it clear that each is entitled to and will receive an individualized sentence which considers everything discussed. Defendant was the principal actor that evening and, while there may have been others involved, Defendant was clearly in control that evening. Defendant was the person making the decisions responsible for rendering the victim unconscious; responsible for having the victim dumped across the street; responsible for dragging the victim off Mr. Maglietta's porch; and, responsible for the vast majority of the blows that were thrown that night. It is very clear to the court that Defendant had every intention of imposing his will that evening by any and all means necessary. There could be no doubt concerning the actions of what occurred that evening because the court viewed said actions in high definition surveillance video. That night, Defendant, and Defendant alone, made a unilateral decision that he was going to be the self-imposed judge and jury, and, but for the grace of God, executioner. (N.T., Sentencing Hearing, August 10, 2017 at pp. 20-21).

As reflected in the aforementioned commentary and considerations noted by the court, this court found sentencing in this matter to be a difficult task. When reviewing of the facts and circumstances of the instant offenses, this court affirmatively considered the relative actions of each co-conspirator individually. Each Defendant in this action received an individualized sentence based upon their relative culpability in this series of vicious assaults. For the reasons noted by the court on the record, ample reasons existed to justify the imposition of a harsher penalty upon this Defendant. Additionally, the court considered Defendant's positive history and all other appropriate factors set forth herein and

11

did not base its sentence solely on the seriousness of the offenses. At sentencing, the court did note that it had concerns that the sentencing guidelines did not fully reflect or envision such a connected series of assaults or the inhumanity undertaken by Defendant on December 25, 2015 and the court was reluctant to deviate from the sentencing guidelines; however, the court believes that a sentence above the aggravated range is appropriate and that any lesser sentence would depreciate the seriousness of Defendant's conduct, which was a very lengthy continued course of violent assaults and not just one isolated assault. (N.T., Sentencing Hearing, August 10, 2017 at p. 20). As such, there were, without doubt, ample reasons noted to support the decision of this court to deviate beyond the aggravated range of the sentencing guidelines. The sentence imposed in this case was not manifestly unreasonable, nor was it the result of partiality, prejudice, bias, or ill-will. It was the result of extensive reflection upon all considerations discussed above.

**B.    DENIAL OF DEFENDANT'S MOTION FOR A MISTRIAL REGARDING THE INTRODUCTION OF GANG-RELATED TESTIMONY INTO EVIDENCE**

Next, Defendant raises a challenge to the court's denial of his motion for a mistrial regarding the admission of certain evidence at trial related to gang involvement on the part of the perpetrators of the instant assault.

By way of background, during his opening remarks, counsel for Co-Defendant, Anthony Maglietta, told the jury that Mr. Maglietta owned Molly's Pub and hired Mr. Ellis and Mr. Lee one year prior to the instant assault. (N.T., Jury Trial II of IV, May 23, 2017, at pp. 287-288). Counsel for Mr. Maglietta continued by stating that Mr. Maglietta only subsequently learned that the individuals he had hired were members of a gang and they started to wear their gang-related colors instead of their work uniforms. (N.T., Jury Trial II of IV, May 23, 2017 at p. 288). Counsel for Mr. Maglietta claimed that Mr. Maglietta was previously beaten by these individuals and only minimally participated in this assault, based upon a fear for his own life. *Id.*

12

In rebuttal, the Commonwealth elicited testimony from Sergeant Michael Gerace, without objection, regarding a photograph from Defendant's Facebook account depicting two co-defendants eating a meal together, in which one was wearing a black t-shirt with red letters, SMM, on the front and the other was wearing a red t-shirt. (N.T., Jury Trial III of IV, May 24, 2017 at pp. 415-416; Commonwealth Exhibit 14). Again, without objection, Sergeant Gerace testified that the significance was that the letters on the shirt stand for Sex, Money, Murder and the red coloring of the other shirt was indicative of the representative set of the Bloods group or street gang in which they associate. *Id.* at 416. The Commonwealth sought to publish Commonwealth Exhibit 14 to the jury and did so without any objection. *Id.* Sergeant Gerace further testified, in direct response to a cross-examination question posed by counsel for a co-defendant, Joshua Ellis, that Mr. Ellis was in a gang at the time of this assault. *Id.* at p. 418.

In considering Defendant's claims in this regard, it must be initially noted that Defendant failed to seek pre-trial severance of his trial from that of the co-defendants and failed to offer a timely objection to the admission of such challenged evidence at trial. Only upon the completion of Sergeant Gerace's lengthy testimony did counsel for Defendant request a mistrial and severance as the result of the admission of such testimony regarding alleged gang activity and involvement. (N.T., Jury Trial III of IV, May 24, 2017 at pp. 418-419). The court denied defendant counsel's motions and indicated that it would give a curative instruction to the jury limiting the use of any challenged prejudicial testimony. (N.T., Jury Trial III of IV, May 24, 2017 at p. 419).

As noted by the Pennsylvania Superior Court in <u>Commonwealth v. Judy,</u> 978 A.2d 1015 (Pa. Super. 2009),

> the trial court is vested with discretion to grant a mistrial whenever the
> alleged prejudicial event may reasonably be said to deprive the defendant
> of a fair and impartial trial. In making its determination, the court must discern
> whether misconduct or prejudicial error actually occurred, and if so,… assess

13

the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consquently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

Commonwealth v. Judy, 978 A.2d 1015 (Pa. Super. 2009).

Additionally, it is specifically noted that a mistrial is not necessary where cautionary instructions are adequate to overcome prejudice. Commonwealth v. Powell, 171 A.3d 294 (Pa. Super. 2017); Commonwealth v. Booker, 103 A.2d 325 (Pa. Super. 2014).

Rule 103(a)(1) of the Pennsylvania Rules of Evidence imposes a requirement that a party claiming error in a ruling to admit or exclude evidence must make a timely objection ... and state the specific ground [for said objection], unless the substance was apparent from the context. Pa. R.E. 103(a)(1).

Additionally, Rule 605(b) of the Pennsylvania Rules of Criminal Procedure states "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed." Pa. R. Crim. P 605(b).

Inasmuch as Defendant failed to offer any timely objection at trial to the admission of the evidence now challenged or seek a mistrial when the disclosure occurred, he has waived the issue. Commonwealth v. Mc Andrews, 430 A.2d 1165 (Pa. 1981); Commonwealth v. Cornelius, 180 A.3d 1256 (Pa. Super. 2018); see also, Commonwealth v. Kuterbach, 326 A.2d 283 (Pa. 1974).

Assuming, *arguendo*, that Defendant has not waived his claims in this regard, this court properly admitted said evidence at trial.

14

A trial court should find evidence admissible if it is relevant, that is "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." Commonwealth v. Williams, 896 A.2d 523, 539 (Pa. 2006) (quoting Commonwealth v. Stallworth, 781 A.2d 110, 117-118 (Pa. 2001)).

Pennsylvania Rule of Evidence 403 sets forth that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice[.]" Pa. R.E. 403. The comment to Pa.R.E. 403 defines "unfair prejudice" as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa. R.E. 403 cmt. Furthermore, our Supreme Court has noted previously that "[e]vidence will not be prohibited merely because it is harmful to the defendant." Commonwealth v. Dillon, 925 A.2d 131, 138–139 (Pa. 2007). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Commonwealth v. Page, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citing Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007)).

As noted above, counsel for Co-Defendant Anthony Maglietta based his defense theory on a claim that Mr. Maglietta had been initially unaware that his employees were involved in gang activity; that he only, subsequently, became aware that these individuals were involved in gang activities; that he had previously been assaulted by these individuals; and, that he only minimally participated in the instant assault upon the victim out of a fear for his own life. The challenged evidence presented by the Commonwealth during rebuttal, which was limited to a photograph and brief testimony regarding the significance thereof, was directly relevant to rebut Mr. Maglietta's claims. The introduction of said evidence permitted the attorney for the Commonwealth to argue that Mr. Maglietta was aware of such

15

gang activity, was complicit in such activity, and was not fearful of any of the other defendants. As such, the probative value of such evidence clearly outweighed any prejudicial impact.

To properly limit any prejudicial effect upon Defendant at this joint trial, the court offered a curative instruction to the jury regarding the limited use of any testimony regarding gang activity. See, Commonwealth v. Housman, 986 A.2d 822 (Pa. 2009); Commonwealth v. Povish, 387 A.2d 1282 (Pa. 1978). Said instruction clearly informed the jury that Defendant was not on trial for any such alleged gang or prior criminal behavior. The jury was instructed that such evidence was before them for sole purpose of addressing Mr. Maglietta's version of the events and that such evidence may not be considered by them in any way other than for that specific purpose.

Further, the court instructed the jury that they must not regard this evidence as showing that Defendant was a person of bad character or criminal tendencies from which they might infer guilt. (N.T., Jury Trial III of IV, May 24, 2017 at pp. 503-504). As previously pronounced by our Supreme Court, there exists a presumption in the Law that the jury followed the instructions given by the trial judge. Commonwealth v. Steele, 559 A.2d 904 (1989). Generally speaking, an instruction to the jury to consider evidence only with respect to the defendant against whom it is offered is sufficient to remove any potential prejudice. Richardson v. Marsh, 481 U.S. 200, 206 (1987); Commonwealth v. Travers, 768 A.2d 845, 847 (Pa. 2001).

Accordingly, for the foregoing reasons, Defendant is unable to demonstrate that the actions taken by this court constitute any abuse of judicial discretion. As such, his claims that the trial court erred in denying his motion for a mistrial and permitting the Commonwealth to present gang-related testimony into evidence on rebuttal must fail.

16

## C. SUFFICIENCY OF THE EVIDENCE

Defendant's final claim of error alleges that the evidence presented at trial was insufficient to sustain convictions of Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault. Specifically, Defendant contends that there was insufficient evidence to establish "serious bodily injury" since the Commonwealth did not introduce any medical testimony or medical records with respect to the alleged injuries sustained during this criminal episode.

In reviewing Defendant's challenge to the sufficiency of the evidence, the appellate court need view the evidence produced at trial in the light most favorable to the Commonwealth as verdict winner to determine if it is sufficient to allow a reasonable jury to find each element of the offenses charged beyond a reasonable doubt. Commonwealth v. Slocum, 86 A.3d 272, 275 (Pa. Super. 2014).

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

Id.

For Defendant to prevail on his claim that the evidence is insufficient, it must be said that accepting all the evidence and all reasonable inferences drawn from the evidence upon which, if believed, the verdict could properly have been based, that the evidence would be insufficient in law to find beyond a reasonable doubt that he is guilty of the crime charged. Commonwealth v. Meadows, 369 A.2d 1266, 1268 (Pa. 1977); Commonwealth v. Quel, 27 A.3d 1033, 1037-38 (Pa. Super. 2011). It is axiomatic that "[b]eyond a reasonable doubt" has never been construed to equate to "beyond all doubt." See, e.g., Commonwealth v. Jones, 858 A.2d 1198, 1201-04 (Pa. Super. 2004).

In reviewing Defendant's contention that the verdict is against the weight of the evidence produced at trial[4], the Pennsylvania appellate courts have repeatedly held that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006). A verdict is only against the weight of the evidence if it is so contrary to the evidence that it shocks one's sense of justice. Id.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Commonwealth v. Widmer, 744 A.2d 745 (Pa. 2000). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. Id. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Id.

> "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice"

Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000).

A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Commonwealth v. Clay, 64 A.3d 1049 (Pa. 2013).

---

[4] The Pennsylvania appellate courts have routinely held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Commonwealth v. Whiteman, 485 A.2d 459 (pa. Super. 1984). As such, Defendant is presently raising facially inconsistent claims of error. Despite said inherent inconsistencies, the trial court will herein address all claims raised by Defendant.

18

The Pennsylvania Crimes Code defines the crime of Aggravated Assault as follows:

(a) Offense defined. ---

A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

18 Pa. C.S.A. §2702(a)(1).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a).

As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. §2301. "A person acts intentionally with respect to a [serious bodily injury] … when it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(1). "A person acts knowingly with respect to a [serious bodily injury] … when he is aware that his conduct is of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(2). "A person acts recklessly with respect to a [serious bodily injury] …. when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa. C.S.A. §302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Id. Such recklessness is shown by the kind of reckless conduct from which a life-threatening injury is almost certain to occur. See, Commonwealth v. O'Hanlon, 653 A.2d 616 (Pa. 1995); Commonwealth v. McHale, 858 A.2d 1209 (Pa. Super. 2004); Pa.S.S.J.I. (Crim.) 15.2702B.

19

"A person is legally accountable for the conduct of another person when … (3) he is an accomplice of such other person in the commission of the offense." 18 Pa. C.S.A. §306. "A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: … (ii) aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306; See, Commonwealth v. Vining, 744 A.2d 310, 321 (Pa. Super. 2000) (transcending mere association, accomplice liability requires active and purposeful participation in criminal activity with others), *appeal dismissed as improvidently granted*, 774 A.2d 1246 (Pa. 2001).

> Section 903(a)(1) of the Crimes Code provides:
>
> § 903 Criminal Conspiracy
>
> (a) Definition of conspiracy —A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;
>> * * *
>
> (b) Scope of conspiratorial relationship. If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

18 Pa. C.S.A. § 903(a)(1), (b). To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy. Jones, *supra.* at 121. Additionally:

> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt.

20

> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121-22. Circumstances such as an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant to prove a conspiracy, when "viewed in conjunction with each other and in the context in which they occurred." Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002) (internal citations and quotation marks omitted) (emphasis added).

At trial in this matter, the Commonwealth presented evidence that Defendant was actively and principally involved in the assaults upon the victim. Sergeant Michael John Gerace, a patrol sergeant with the Lancaster City Bureau of Police, where he has been employed for seventeen years, testified that during the investigation he reviewed surveillance video footage from the Lancaster Community Safety Coalition of the assault in this matter. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 136; Commonwealth's Exhibits 5-9). Sergeant Gerace was also able to obtain video footage from a surveillance camera located at Molly's Pub, the scene of the assault. (N.T., Jury Trial, Volume 1 of IV, May 22, 2017 at p. 151; Commonwealth's Exhibits 5-9). Sergeant Gerace had the ability to view much of the assault which had taken place from his review of the video footage. (Id.) Sergeant Gerace observed Defendant standing in the area of Molly's Pub take-out on Shippen Street in the area of a flower box with the co-defendants and the victim. (Id. at pp. 165-168). Detective Gerace observed that Defendant punch the victim on the left side of his face, had pushed the victim to the ground, and had further punched and kicked the victim in the face. (Id. at pp. 168-177). Sergeant Gerace explained that the video footage showed Defendant scoop up the victim, while being followed by co-defendants, Mr.

21

Ellis and Mr. Rodriguez-Cruz. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 176 and 187).

Sergeant Gerace described the victim, at this point of the assault as "a virtually unconscious body."

(Id.). He then viewed the victim being taken to an unknown location by Defendant and Co-Defendants,

Mr. Ellis and Mr. Rodriguez-Cruz, who return to Molly's Pub without the victim and speak to each

other, all while smiling. (Id.). Sergeant Gerace explained that the video footage then depicted the

victim coming back to the area between Molly's Pub and the adjoining home of Mr. Maglietta. (N.T.,

Jury Trial, Volume I of IV, May 22, 2017 at p. 177). All perpetrators, including Defendant, followed

the victim at this time and placed him in the flower box. (Id. at pp. 191-192). Sergeant Gerace observed

the victim, who was lying back on a planter on the side of Molly's Pub, being kicked in the head by Co-

Defendant, Mr. Maglietta. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 186).

In addition to the testimony of Sergeant Gerace, the Commonwelath presented the testimony of

Officer Herbert Watson of the Lancaster City Bureau of Police. Officer Watson testified that he

observed serious injuries on the victim's face and body so he called for an ambulance and Defendant

was treated as a trauma patient. Officer Watson further testified that the Victim was having difficulty

standing and communicating as a result of his injuries. (N.T., Jury Trial, Volume I of IV, May 22, 2017

at pp. 60-61).

At trial, the victim testified that he suffered multiple injuries, including black eyes, fragmented

bones in his ears, injuries to his nose, pain to his ribs, bleeding on his brain, the inability to properly

walk for several months, and lingering memory issues As the result of this vicious and prolonged

assault. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 86-88).

Upon consideration of the totality of the evidence presented at trial, which, certainly, was more

than just the video surveillance footage, the jury specifically found that serious bodily injury was caused

pursuant to a special inquiry under Count I – Aggravated Assault of the Verdict Slip.

In <u>Commonwealth v. Gray</u>, 867 A.2d 560 (Pa. Super. 2005), the fact-finder concluded that that the defendant inflicted serious bodily injury based on police observations of a number of puncture and stab wounds on the victim and the parties' stipulation that the victim informed her doctor that she had been stabbed in the arm with a knife and in the forehead and scalp with a screwdriver. <u>Id.</u> at 568. There was no necessity for expert medical evidence to be introduced at trial to establish that these wounds were inflicted by the defendant or constituted serious bodily injury.

The trial court firmly believes that the totality of the evidence presented at trial established that Defendant's actions supported his convictions of Aggravated Assault and Criminal Conspiracy to Commit Aggravated Assault. Defendant directly physically assaulted the victim numerous times; followed the victim with the co-defendants; and, left the victim lying unconscious for an extended time without summoning medical attention. While there can never be a precise determination as to whether this Defendant's blows resulted in the serious bodily injury suffered by the victim, there can simply be no doubt that the totality of the actions of this Defendant, taken in concert with the actions of accomplices and co-conspirators, unfortunately and unquestionably achieved such a result. Although the Commonwealth was unable to present any direct evidence regarding any explicit agreement between Defendant and his co-defendants, based upon the factual background established by the Commonwealth, there can, again, be no doubt that such an agreement existed and was proven, by circumstantial evidence, beyond a reasonable doubt. As noted above, Defendant: was present for the entirety of this prolonged series of violent assaults upon the victim; was actively participating in and aiding his co-conspirators during said assaults; was repeatedly directly physically punching and kicking the victim during said assaults; and, was acting with a unified purpose with his co-conspirators.

Therefore, upon consideration of the totality of the evidence presented at trial and for the reasons as set forth above, the verdict in the instant matter is supported by sufficient evidence presented at trial.

While Defendant is, no doubt, displeased with the verdict reached by the jury in this matter, such verdict is supported by the evidence presented at trial and all relevant inferences therefrom. It is quite apparent that the jury resolved the relevant credibility issues in favor of the witnesses presented by the Commonwealth and chose to specifically reject the testimony and arguments presented by Defendant and Co-Defendants. It is ultimately the purview of the jury, as fact finder, to make such credibility determinations. The trial court cannot weigh upon the credibility of the witnesses. Accordingly, Defendant has failed to demonstrate that the verdict in this matter served to shock one's sense of justice. As such, Defendant's claim as to sufficiency and weight of the evidence in this regard must fail.

## CONCLUSION

Accordingly, for the reasons set forth above, I conclude the grounds identified by Defendant in his Concise Statement of Errors Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) lack merit and respectfully request that the instant appeal be DENIED.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE
May 15, 2018

ATTEST:

Copies to:   Ryan D. Tilley, Esquire, Office of the District Attorney of Lancaster County
Andrew S. Cooper, Esquire, Attorney for the Defendant

LANCASTER COUNTY, PA
2018 MAY 15 PH 4: 05
CLERK OF COURTS